[Crim. No. 10986. Second Dist., Div. Four. Mar. 10, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE LEE HAWKINS, Defendant and Appellant.

Earl J. McDowell, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and A. Barry Cappello, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged with grand theft of an automobile in violation of subdivision 3 of section 487 of the Penal Code. He pled ''not guilty'' and, after a trial by jury, he was found guilty as charged. A motion for new trial was made and denied; he was sentenced to state prison; sentence was suspended and he was granted probation for four years on condition (*inter alia*) that he spend one year in the county jail. He has appealed from the order granting proba-

tion and from the order denying his motion for new trial. ██ ██ The order granting probation is appealable; the order denying the new trial is not. (Pen. Code § 1237, subd. 1.) We dismiss the latter appeal.

### FACTS

When Donald L. Nichols returned to a parking lot at his place of work on November 3, 1964, he discovered that his yellow 1964 Corvair Monza automobile was missing. Mr. Nichols testified he had earlier locked the car and closed the windows. Mr. Nichols reported the missing car to the police. Upon receiving a radio call at 11 a.m. on November 18, 1964, Officer Brooks went to 2616 West 73d Street where he saw defendant on the lawn washing a yellow 1964 Corvair Monza automobile. Upon inquiry about the officer's purpose in being there, the officer told defendant that the police had received a call concerning tire theft suspects. Defendant then said he was washing the car and had rotated the tires. The officer asked who owned the car, and he also asked defendant for some identification, and for the car registration. Defendant said the car was his, that he had bought it from Fletcher Jones Chevrolet and that he could not produce the identification or registration because they were locked in the house. The officer noticed that the car had a temporary license plate, and that there was gray primer around the metal identification plate. In response to the officer's question about whether the car was painted recently, defendant said "Yes, it used to be red."

Officer Brooks ran a check over the police radio, and when the call came back the officer discovered for the first time that this was a stolen car. Officer Brooks then placed defendant under arrest, advised him of his constitutional right to remain silent, that he could have the services of an attorney, and that anything he said could be used against him in court.

Immediately after this, the officer again asked him who the car belonged to, and defendant said it was his. The officer said that the car was reported stolen and defendant explained: "Oh, yes. I had it repossessed one time and my mother made a stolen report on it, but we had that straightened out."

At University Station, Detective Officer Brooks, in the presence of Officer Monahan, again advised defendant of his constitutional rights, and defendant again told the same story. En route from University Station to the Police Administration Building, Officer Hidalgo, in the presence of Sergeant

Smith, advised defendant of his constitutional rights. Defendant said he would answer any questions because he didn't steal the car. Defendant told Officer Hidalgo that the car belonged to his girl friend, that he took over the car from her, that she moved and he didn't know where she lived.

Hawkins' defense was that he borrowed the car from a friend, Gary Davis, and that when he went to return the car, he was unable to find Davis. He contends that he was not advised of his constitutional rights at all until he was at the police station, and then he was told only that he didn't have to say anything if he didn't want to.

## I

██ Defendant's first contention was that the court erroneously stated the law in its instruction to the jury on the rule of exclusion pronounced in *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and that the court erred in refusing an instruction on this issue that was requested by the defendant.

The Attorney General argues that the question of admissibility of statements, claimed to have been obtained in violation of *Escobedo-Dorado* is exclusively for the trial judge and that, therefore, since he had ruled the statements admissible, any error in the instructions was nonprejudicial.

We need not, in this case, determine the exact functions of court and jury with respect to issues of fact arising under the *Escobedo-Dorado* doctrine in cases tried before January 1, 1967.[1] *People* v. *Schader* (1965) 62 Cal.2d 716 [44 Cal.Rptr. 193, 401 P.2d 665], held that it was improper for a trial court to submit such issues to the jury without having first made a preliminary determination of admissibility of the statements obtained. In *People* v. *Sanchez* (1967) 65 Cal.2d 814 [56 Cal.Rptr. 648, 423 P.2d 800], the Supreme Court held that, at least under the circumstances therein obtaining, the trial court, having made a preliminary determination of admissibility, was not required to submit the issue for an independent determination by the jury. Neither case, however, holds that it is error to allow the jury to pass on the factual issues after the trial court's initial determination. As a result, of course, there is no decision on the question posed by the Attorney General of the effect of erroneous instructions to the

---

[1]As to the procedure to be followed in cases tried after January 1, 1967, consult Evid. Code, § 405; Witkin, Cal. Evidence (2d ed. 1966), §§ 492 and 1092.

jury on such issues.[2] In the instant case, as we shall point out, the instructions given to the jury were not improper; it follows that no harm could have been done to defendant by the double submission.

The instruction that was requested by the defendant, and rejected by the court, read as follows:

"Before any statement made by an individual to a law enforcement officer, or his agent, can be considered by you, you must be satisfied beyond a reasonable doubt that once a police investigation has began [sic] to focus on a particular suspect that such suspect, prior to the time he made any statements to such officers, was duly informed by such law enforcement officers of (1) his right to counsel, (2) his right to remain silent, and (3) that any statement he made could be used in evidence against him.

"If you should from the evidence not be satisfied beyond a reasonable doubt that such individual was informed of his rights, under the conditions hereinbefore described, prior to the time that he had such a conversation with a law enforcement officer, then you shall completely disregard any such statements."

This instruction was an incorrect statement of the law and therefore was properly refused. The instruction contains no admonition that, in order for the *Escobedo-Dorado* rule to become applicable, the defendant must be in "custody," and the case of *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838], definitely establishes that "custody" is an essential prerequisite before that rule can apply.

The Attorney General also raises the issue of other alleged inaccuracies in the above cited requested instruction. However, we need not discuss whether the requested instruction was inaccurate on these other points. ▉ The court may properly reject an erroneous instruction without modification (*Roy* v. *Mission Taxi Co.* (1950) 101 Cal.App.2d 438, 447 [225 P.2d 920]), and give instructions on its own motion. (*Jennings* v. *Arata* (1948) 83 Cal.App.2d 143, 146 [188 P.2d 298].)

▉ The court on its own motion gave the following instruction: "The law does not restrict law enforcement officers during the investigatory stage from securing information from one who is later accused of the crime or from

---

[2] See the concurring opinion of Mr. Justice Goldberg in *Townsend* v. *Sain* (1963) 372 U.S. 293, 322-325 [9 L.Ed.2d 770, 83 S.Ct. 745].

obtaining answers to their questions. Any statements obtained without coercion prior to the accusatory stage may be considered. However when the investigatory stage has become an accusatory one, that is when it has begun to focus on a particular suspect, the suspect has been taken into police custody then before any statements thereafter made can be received in evidence and considered by the jury the suspect must have been advised of his right to remain silent, his right to counsel and that any statements he might make could be used against him in Court and if you believe that the defendant was not so advised then you must not consider any statements made by him after the accusatory stage of the proceedings had been reached and the defendant taken into custody.''

This instruction correctly included the element of custody, but failed to instruct that there must be a process of interrogation tending to elicit incriminating statements. (See *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].) We fail to see how this omission could possibly have prejudiced the defendant. On the contrary, a failure to instruct on this element, at worst, could have led the jury to believe that it was the officer's duty to give a *Dorado* type warning even in situations where such a warning was not actually required under the law. ■ Error is not prejudicial where we can properly conclude that it was ''harmless beyond a reasonable doubt.'' (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)

For the reason just stated, we are of that opinion in this case.

The order granting probation is affirmed; the purported appeal from the order denying the motion for a new trial is dismissed.

Files, P. J., and Jefferson, J., concurred.