[No. D008810. Fourth Dist., Div. One. Feb. 20, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
SAMUEL OTHELLO BOLDEN, JR., Defendant and Appellant.

## COUNSEL

Robert D. Frank and Katharine A. Yesson, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Holly D. Wilkens, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**NARES, J.**—In 1980 Samuel Othello Bolden, Jr. (Bolden), was found not guilty by reason of insanity of assault with a deadly weapon, assault with intent to commit murder and attempted murder. He appeals from an order extending his commitment to Patton State Hospital (Patton) following a jury trial in which he was found to have a mental disease which causes him to represent a substantial danger of physical harm to others. (Pen. Code, § 1026.5, subd. (b)(1).)[1]

---

[1] All statutory references are to the Penal Code unless otherwise specified. When referring to statutory subparts we omit repeating the word "subdivision."

Although Bolden is a chronic paranoid schizophrenic, there was substantial evidence showing his behavior is controlled by psychotropic medication. Bolden contends the order extending his commitment should be reversed because (1) the court refused to instruct the jury it could consider his medicated condition in determining whether he was dangerous; and (2) the prosecutor improperly suggested, in closing argument, the jury should consider the likelihood of Bolden's future dangerousness.

Although we reject the People's invitation to overrule *People* v. *Williams* (1988) 198 Cal.App.3d 1476 [244 Cal.Rptr. 429], we affirm, concluding the court's failure to give the requested instruction was harmless and Bolden's other contention lacks merit.

### FACTS AND PROCEDURE

In 1978 Bolden shot his father and brother, believing they were imposters and he was, in fact, Howard Hughes's son. After finding Bolden not guilty by reason of insanity, the court ordered him committed to Patton for the maximum term of 10 years, with credit for time served.

In 1988 the People filed a petition under section 1026.5(b)(1)[2] to extend Bolden's commitment.

At trial several psychiatrists and other mental health professionals testified about Bolden's condition, behavior, treatment, and prognosis. Benjamin Bensoul, a psychiatrist, diagnosed Bolden as a chronic paranoid schizophrenic. No witness disputed this diagnosis. In April 1988 Bolden told Dr. Bensoul a robot in a motion picture "had something to do with Lucifer, Lucifer was God's servant, that the robot was God's servant and that somehow the spaceship had to deal with a government project. . . ." Other examples of Bolden's delusions include an incident in April 1988 where he told hospital staff to "contact all the Agent 99's. They tried to kill Howard Hughes last night. I need $150. Contact the Russians." One evening in 1988 Bolden told Angelo Millan, a physician, that he (Bolden) was God, and Lucifer was standing beside him.

Attempting to treat Bolden's symptoms, physicians have prescribed Prolixin Decanoate, a "major tranquilizer" injected once every three weeks. Although some evidence indicates Bolden remained delusional even while medicated, other testimony showed the behavioral manifestations of Bol-

---

[2] Section 1026.5(b)(1) provides: "A person may be committed beyond the term prescribed by subdivision (a) only under the procedure set forth in this subdivision and only if such person has been committed under Section 1026 for a felony, and who by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others."

den's illness were controlled by this medication. Ira Vroubel, a clinical psychologist, testified a "direct link" exists between Bolden's medication and psychosis: "Mr. Bolden has undergone several decompensations which basically mean a deterioration of his level of functioning . . . and this has been associated with a reduction—a discontinuation of his medication, and he has become overtly psychotic." Similarly, Dr. Millan testified Bolden would neither be psychotic nor violent if medicated: "Mr. Bolden becomes violent only because of his illness. He responds to androids, to cyclones, to green people from U.F.O.'s, to Lucifer. He can be told to do this. He can be told to shoot because of his false perception. . . . [¶] When Mr. Bolden believed that his father was an imposter, he shot his father. . . . [¶] It is contrary to reason. It is contrary to what most people think, and that's what makes him dangerous. [¶] It's his illness. When it manifests itself he is very dangerous. *When his illness is controlled by medication he will not be dangerous.*" (Italics added.) The parties recognized Bolden's nondangerous behavior while medicated is irrelevant under section 1026.5(b) without evidence he would self-medicate if unsupervised.[3] The parties presented conflicting evidence on this issue.

Richard Welch, a psychiatric social worker, testified Bolden denies having any mental illness, and as a result "he is unlikely to cooperate with the medications if he wasn't supervised." Vroubel, a clinical psychologist, stated "there is a high likelihood that without adequate supervision Mr. Bolden would stop taking medication and he would become overtly psychotic and would represent a substantial danger." Dr. Millan agreed, stating "when Mr. Bolden thinks he has no mental illness, then he will stop taking his medication because he does not need it. Then he will regress and then he will be a danger to society." In addition to these experts' opinions, the People introduced evidence showing Bolden had not taken his oral medication even while institutionalized at Patton.

In contrast, Robert Strauss, a recreational therapist, testified Bolden takes his medication and Eula Maye Collins, a nursing assistant, testified Bolden understands "the value of the meds for himself and knows that he must take them."

Citing the trial court to *People* v. *Williams, supra*, 198 Cal.App.3d 1476, Bolden requested the following jury instruction: "In determining whether or not Mr. Bolden is a substantial danger to the physical welfare of others,

---

[3] Under section 1026.5(b), if the jury finds the respondent does not represent a substantial danger to the physical safety of others, the respondent is unconditionally released. Although the jury was not specifically instructed in this regard, there was evidence to this effect. Richard Welch testified: "If he is not extended today, what would happen is, I would give him $50 and walk him to the gate and that would be it."

you must take into account what he is like while in a medicated condition. [¶] If the prosecution hasn't proven to you beyond a reasonable doubt that Mr. Bolden is a substantial danger in a medicated state and that he will not continue to take his medication in an unsupervised environment, then you must find that he is not a danger." Without stating its reasons on the record, the court refused to so instruct. The jury found Bolden represents a substantial danger of physical harm to others. The court ordered Bolden recommitted to Patton for an additional two years. (§ 1026.5(b)(6).)

DISCUSSION

*Instructional Error*

When a person is committed to a state hospital after having been found not guilty by reason of insanity, the commitment term runs until sanity is restored (§ 1026.2) or until the maximum state prison term which could have been imposed for the offenses the defendant committed has expired, whichever occurs first. (§§ 1026.5(a)(1); 1026.1.) For obvious reasons of public safety, section 1026.5(b) qualifies these restrictions. Under section 1026.5(b), even after the maximum term has expired, the court may extend commitment at two-year intervals where the defendant has been convicted of a felony and has a mental disease which causes him to "represent a substantial danger of physical harm to others." Accordingly, the resolution of a section 1026.5(b) proceeding will often turn on whether the respondent represents a substantial danger of physical harm to others. (See *People* v. *Jenkins* (1985) 168 Cal.App.3d 41, 46 [213 Cal.Rptr. 904].)[4]

In *People* v. *Williams, supra,* 198 Cal.App.3d 1476, this court considered whether a person found not guilty by reason of insanity could be considered restored to sanity under section 1026.2 where his symptoms were controlled by medication but his underlying illness remained. *Williams* held where supported by the evidence, the respondent is entitled (upon request)[5] to an instruction directing the jury's attention to two facts: (1) the effect of medication on his dangerousness; and (2) whether he will self-medicate in an unsupervised setting. (*Id.* at p. 1479.) Under *Williams,* the jury may find sanity restored in a section 1026.2 proceeding if it finds, by a preponderance

---

[4]Although section 1026.5 does not define a crime, subsection (b)(5) states, "The person shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings." Subsection (b)(3) states, "The rules of discovery in criminal cases shall apply." Accordingly, although § 1026.5 does not define a crime, it is certainly analogous to one and we hereafter refer to the facts the People must prove as "elements" and defensive matters as "defenses."

[5]Neither *Williams* nor Bolden's case presents the issue whether the trial court must give such an instruction sua sponte. We express no opinion on such issue.

of the evidence, the respondent is not dangerous in a medicated condition and will continue to self-medicate in an unsupervised environment.[6]

Here, the parties take the high ground, the People urging us to overrule *Williams,* and Bolden arguing *Williams* applies to section 1026.5. Until oral argument, neither party had considered the preliminary issue—whether the instruction Bolden framed accurately states the law even if *Williams* applies in this context.

Bolden's proffered instruction states: "If the prosecution hasn't proven to you beyond a reasonable doubt that Mr. Bolden is a substantial danger in a medicated state *and* that he will not continue to take his medication in an unsupervised environment, then you must find that he is not a danger." (Italics added.) By its own terms, Bolden's instruction permitted the jury to find he was a substantial danger only if the People proved *both* he was a danger *when medicated* and he would not take his medication. However, if Bolden is a substantial danger even when medicated, then whether he would take his medication when unsupervised is irrelevant. Even under Bolden's own theory, his proposed instruction would require the People to prove too much. At oral argument, even Bolden conceded his proposed instruction was "inartful."

Although Bolden's requested instruction incorrectly states the law (assuming *Williams* applies to § 1026.5), this alone does not support the trial court's refusal to properly instruct. ■ "The trial court must correct defects in proffered instructions where the nature of the defendant's theory is made clear to it." (*People* v. *Brady* (1987) 190 Cal.App.3d 124, 136 [235 Cal.Rptr. 248].)[7] ■ Here, although the jury could well have concluded to the contrary, Bolden introduced evidence he is not dangerous while medicated and would take his medication. Accordingly, if *People* v. *Williams* applies under section 1026.5(b)—that is, if the respondent may offer evidence of the effect of medication on his behavior and the likelihood he

---

[6] Section 1026.2(k), the statute applied in *Williams,* states, "In any hearing authorized by this section, the applicant shall have the burden of proof by a preponderance of the evidence."

[7] We acknowledge a contrary line of authority, including *People* v. *Franco* (1970) 4 Cal.App.3d 535 [84 Cal.Rptr. 513], which states, "[I]t is not error to refuse an instruction which is an incorrect statement of the law." (*Id.* at p. 542.)

However, in support of its conclusion, the court in *Franco* cites *People* v. *Hawkins* (1967) 249 Cal.App.2d 379 [57 Cal.Rptr. 522]. In turn, *Hawkins* relies on *Roy* v. *Mission Taxi Co.* (1950) 101 Cal.App.2d 438 [225 P.2d 920]—a civil case. (*People* v. *Hawkins, supra*, 249 Cal.App.2d at p. 383.) In *Roy*, the court refused an argumentative and formula instruction; it did not refuse an instruction which was defective solely because it misstated the law. (*Roy* v. *Mission Taxi Co., supra*, 101 Cal. App.2d at pp. 445-446.)

Accordingly, we question the validity of the above-quoted statement in *People* v. *Franco* and *People* v. *Hawkins*.

will self-medicate—the court should have corrected and then given the requested instruction.

Adopting the dissent's arguments in *People* v. *Williams,* the People ask us to overrule *Williams.* ▮ However, the Supreme Court denied review in *Williams,* which " 'may be taken as an approval of the conclusion there reached, but not necessarily of all of the reasoning contained in that opinion.' [Citation omitted.]" (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 367 P.2d 865]; but see *Jennings* v. *Superior Court* (1980) 104 Cal.App.3d 50, 56-57 [163 Cal.Rptr. 391] and Advisory Com. comment, Cal. Rules of Court, rule 28 ["It has long been established in California law that a denial of hearing is not an expression of the Supreme Court on the merits of the cause"].)

More importantly, despite the inevitable differences among justices of appellate courts, stare decisis remains a vital principle. We hesitate to overrule a decision rendered by another panel of this court except for compelling reasons.

Although the People assert *Williams* is incorrect because the Legislature did not intend a jury to consider an applicant's medicated status in determining dangerousness under section 1026.2, they do not cite, nor has our own research located, any specific items in the statute's text, legislative history, or context providing explicit guidance on this issue. Although *Williams* may be open to criticism, under these circumstances, we decline the invitation to overrule it.

Determining *Williams* should not be overruled does not, however, resolve whether *Williams* applies in Bolden's case, which arises under a different statute (§ 1026.5) serving different purposes and policies. ▮ A case is not authority for points neither considered nor decided (*People* v. *Myers* (1987) 43 Cal.3d 250, 265, fn. 5 [233 Cal.Rptr. 264, 729 P.2d 698]) and *Williams* neither discussed, analyzed, nor addressed section 1026.5. *Williams* 's precedential force is limited to its own facts and issues. (See *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 734-735 [257 Cal.Rptr. 708, 771 P.2d 406].) Accordingly, we must carefully examine the statute and policies at work in *Williams* to determine if a similar result is compelled here.

Section 1026.2, the statute at issue in *Williams,* provides a two-stage proceeding for persons seeking release on the basis their sanity has been restored. In the first stage, the court determines whether the respondent "will not be a danger to the health and safety of others . . . *while under supervision and treatment.* . . ." (§ 1026.2(e), italics added.) If the court so

concludes, the person is placed in an outpatient treatment program for one year. (*Ibid.*) At the end of one year, a trial is conducted to determine if the respondent's sanity "has been restored." (*Ibid.*) Under section 1026.2(e), sanity is restored when the respondent "is no longer a danger to the health and safety of others, including himself or herself."

*Williams* approved a jury instruction stating sanity is "restored" under the *second* stage of a section 1026.2 proceeding when the respondent is no longer dangerous in a medicated condition and will continue to self-medicate. (*People* v. *Williams, supra*, 198 Cal.App.3d at p. 1479.) Accordingly, viewed as a case of statutory interpretation, as it must, *Williams* implicitly determined the "not dangerous *while under treatment*" standard of dangerousness which is expressly required by the statute under the first stage of a section 1026.2 proceeding also applies to the second stage where the treatment under consideration is the respondent's medicating himself.

Unlike the statute at issue in *Williams,* here section 1026.5 defines dangerousness *without regard to the effect of medical treatment.* Under section 1026.5(b)(1) and section 1026.5(b)(5), the People sustain their burden by proving beyond a reasonable doubt the respondent (1) was committed for a felony and (2) has a mental disease, defect, or disorder (3) which causes him to represent a substantial danger of physical harm to others.

By definition, the only persons coming within section 1026.5's framework are felons who have previously proven their own insanity. (Evid. Code, § 522; Pen. Code, § 25(b) [defendant must prove insanity defense by a preponderance of the evidence].) Given a release under section 1026.5 is an unconditional one—the released person leaves the psychiatric facility without further supervision or compulsory treatment—the Legislature's failure to define dangerousness under section 1026.5(b)(1) in terms of behavior while under treatment is no mere oversight. Both the language in section 1026.5 and the policy of protecting the public compel the conclusion that under section 1026.5(b)(1), the state sustains its burden by showing, among the other elements, the respondent is dangerous to the physical safety of others, *without regard to the effect of any medication.*

Thus, section 1026.2 (as construed by *Williams*) and section 1026.5 significantly differ: Section 1026.2 defines "dangerousness" in terms of behavior while under "treatment," whereas section 1026.5, by its own terms, does not. *Williams*'s rule requiring the jury be instructed to consider treatment in determining "dangerousness" in a section 1026.2 proceeding cannot logically be carried wholesale into section 1026.5, which contains a different standard for release.

This conclusion does not mean, however, that evidence regarding the respondent's behavior while medicated and the likelihood he will self-medicate is irrelevant under section 1026.5. As *Williams* noted, many people afflicted with mental illness fully function in society with the aid of medication. Moreover, in *Williams,* this court emphasized the failure to consider such evidence could result in individuals languishing indefinitely in mental hospitals because of their reluctance to rely on medication and would discourage such patients from taking medication vital to their well-being. (*People* v. *Williams, supra*, 198 Cal.App.3d at p. 1482.)

Although we have determined *Williams* is distinguishable on its facts and issues, the policy considerations outlined above have equal force here. If Bolden is not dangerous while medicated and will *unfailingly* self-medicate in an unsupervised environment in the future, section 1026.5's core policy— protecting the public from persons who have already demonstrated their dangerousness—is not threatened. Under such circumstances, there is no reason someone in Bolden's position should remain in custody, having already served the maximum period of confinement under which he could have been sentenced had he simply pleaded guilty to the underlying offense.

 In light of the foregoing and in the absence of any legislative indication to the contrary, we conclude, therefore, the following: (1) The People present a prima facie case under section 1026.5(b)(1) by showing, beyond a reasonable doubt, that the respondent was committed for a felony and has a mental disease, defect, or disorder which causes him to represent a substantial danger of physical harm to others, without regard to the effect of treatment or medication upon his behavior; (2) however, the effect of medication in controlling the respondent's dangerousness and whether he will self-medicate in an unsupervised environment may be raised by the respondent as a defense.

Perhaps anticipating this result, at oral argument the parties addressed whether Bolden may constitutionally be required to prove such a defense by a preponderance of the evidence, or whether the People must instead prove the absence of such facts beyond a reasonable doubt.

Section 1026.5(b)(5) provides Bolden is entitled "to the rights guaranteed under the federal and State Constitutions for criminal proceedings." The due process clause of the federal Constitution requires the People to prove every element of a criminal charge beyond a reasonable doubt. (*Mullaney* v. *Wilbur* (1975) 421 U.S. 684 [44 L.Ed.2d 508, 95 S.Ct. 1881]; *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068].) However, "the Due Process Clause [does] not invalidate every instance of burdening the defendant with proving an exculpatory fact." (*Patterson* v. *New*

*York* (1977) 432 U.S. 197, 203, fn. 9 [53 L.Ed.2d 281, 287, 97 S.Ct. 2319].)
It is constitutional to require a criminal defendant to bear the burden of
proving an affirmative defense by a preponderance of the evidence. (*Martin
v. Ohio* (1987) 480 U.S. 228 [94 L.Ed.2d 267, 107 S.Ct. 1098].) In this
context, an affirmative defense is one which presumes the prima facie ele-
ments of the crime are true, but exculpates the defendant because of excuse
or justification. (*Adkins* v. *Bordenkircher* (4th Cir. 1982) 674 F.2d 279, 282,
overruled on other grounds in *Meadows* v. *Holland* (4th Cir. 1987) 831 F.2d
493, 498, fn. 8 [*Meadows* itself is vacated by *Meadows* v. *Holland* (1989)
489 U.S. 1049 (103 L.Ed.2d 575, 109 S.Ct. 1306)].) Stated another way, in
this context an affirmative defense is one which does not negate any element
of the crime, but is new matter which excuses or justifies conduct which
would otherwise lead to criminal responsibility. For example, necessity is a
defense which admits, for the sake of argument, the elements of the charged
offense, but offers a justification to avoid criminal culpability. As such, it is
an affirmative defense which the defendant must prove by a preponderance
of the evidence. (*People* v. *Waters* (1985) 163 Cal.App.3d 935 [209
Cal.Rptr. 661].)

In contrast, some defenses do not admit the elements of the crime, but
instead serve to overcome or negate such proof. For example, alibi negates
an element of the People's case—identity. Similarly, voluntary intoxication
negates proof of an element of some crimes—specific intent. Where the
defense would necessarily negate an essential element of the crime charged,
the state may not constitutionally place the burden of persuasion on that
issue upon the defendant. (*People* v. *Babbitt* (1988) 45 Cal.3d 660, 694 [248
Cal.Rptr. 69, 755 P.2d 253]; *Holloway* v. *McElroy* (5th Cir. 1980) 632 F.2d
605, 624-625; *People* v. *Lewis* (1947) 81 Cal.App.2d 119, 123-124 [183 P.2d
271] [alibi]; CALJIC No. 4.21 [voluntary intoxication].)

Here, although section 1026.5 does not define a crime, it provides, "The
person shall be entitled to the rights guaranteed under the federal and State
Constitutions for criminal proceedings." (§ 1026.5(b)(5).) Accordingly, in
determining whether Bolden may constitutionally bear the burden of prov-
ing his defense, we must consider whether it is an affirmative defense or
instead negates an element of the People's case.

The "elements" under section 1026.5 are (1) a felony resulting in commit-
ment and (2) mental disease, defect or disorder (3) which causes danger-
ousness. Bolden's defense is (1) medication makes him not dangerous and
(2) he will take his medication without fail in the future in an unsupervised
environment. This defense admits (arguendo) the truth of the elements of
the People's case: (1) his felony resulting in commitment; (2) the underlying
mental illness; and (3) that without medication, he is dangerous. Stated

differently, there is nothing logically inconsistent with the truth of both the elements of the People's case and those of Bolden's defense existing simultaneously. ■ Accordingly, the defense Bolden seeks entitlement to is an affirmative defense. As such, the state may constitutionally place upon Bolden the burden of proving his defense by a preponderance of the evidence. In our view, section 1026.5 can reasonably be construed to require a respondent who has been absolved of criminal responsibility for a felony because of his mental illness and who has already demonstrated his dangerousness to persuade the trier of fact, by a preponderance of the evidence, that his medication is effective in controlling his behavior and he will, in a completely unsupervised environment, take his medication without fail.

■ Bolden made his theory of defense plain to the trial court and proffered an incorrect instruction. As discussed above, the court was required to correct the instruction by directing the jury to consider the effect of Bolden's medication on his dangerousness and whether he would self-medicate in the future in an unsupervised environment. The court should have instructed that Bolden bore the burden of proving such a defense by a preponderance of the evidence. Noting this court held a similar failure to instruct was reversible error in *Williams,* Bolden contends his order of recommitment must also be reversed.

However, a critical difference exists between *Williams* and the situation here. In *Williams,* the court instructed the jury to disregard the effects of medication upon the applicant's behavior. (*People* v. *Williams, supra,* 198 Cal.App.3d at p. 1479.) In contrast, here the court gave CALJIC No. 4.17 and no instruction at all regarding the effect of medication.[8] Citing *People* v. *Brown* (1988) 45 Cal.3d 1247 [248 Cal.Rptr. 817, 756 P.2d 204], the People contend this distinction, coupled with the arguments of counsel, adequately presented to the jury the theory which Bolden claims should have been the subject matter of the instruction. As discussed below, we agree.

In *People* v. *Brown, supra,* 45 Cal.3d 1247, the court considered whether the jury, given an " 'unadorned factor (k)' " instruction, was nevertheless properly informed through counsel's arguments about the mitigating circumstances properly bearing on its penalty choice. Focusing on the closing arguments of both the prosecutor and defense attorney, the Supreme Court stated: "[I]nstructions such as those given here are not crucially erroneous,

---

[8] CALJIC No. 4.17 (1988 rev.) states: "In this case, the question for your determination is whether the respondent, ＿＿＿＿＿＿＿ , by reason of a mental disease, defect or disorder, represents a substantial danger of physical harm to others. [¶] The State has the burden of proving beyond a reasonable doubt that the respondent: [¶] (1) Has a mental disease, defect or disorder, and [¶] (2) By reason of such mental condition represents a substantial danger of physical harm to others."

deficient, or misleading on their face, but may become so in particular circumstances. [Citation omitted.] When the issue is not whether erroneous instructions have been cured by argument, but whether the interplay of argument with individually proper instructions produced a distorted meaning, it seems appropriate to evaluate the remarks of both counsel to determine whether the jury received adequate information." (*Id.* at p. 1256.) Applying *People* v. *Brown*, in *People* v. *Nguyen* (1988) 204 Cal.App.3d 181 [251 Cal.Rptr. 40], the court agreed with the defendant's contention CALJIC No. 3.00 was improper because, although it did not misstate the law, it was incomplete. Stating "instructions should not be viewed in a vacuum" and citing *People* v. *Brown*, the court in *Nguyen* looked to the prosecutor's closing argument "to conclude the jury was adequately informed notwithstanding the claimed inadequacies of CALJIC No. 3.00." (*People* v. *Nguyen, supra*, 204 Cal.App.3d at p. 188.)

Here, like the situation in *Nguyen*, CALJIC No. 4.17 does not misstate the law. Instead, where, as here, the defendant relies on a medication defense, it is incomplete. Moreover, unlike the situation in *People* v. *Williams*, here the court did not misstate the law. Accordingly, because CALJIC No. 4.17 is not misleading or erroneous on its face, in assessing whether prejudicial error occurred, we may consider counsels' closing arguments to determine whether the jury "understood its mission and completed it properly." (*People* v. *Nguyen, supra*, 204 Cal.App.3d at p. 189.)

As summarized above, there was abundant testimony concerning the effect of medication on Bolden's dangerousness and his propensity to self-medicate. In closing argument, the People stated: "He has told several doctors that, 'I will only use medication if I have to.' *That's a problem, that's something for you to consider.* [¶] The doctors felt that he was unlikely to take his medication without supervision. That's why he's in an injection system now.

"• . . . . . . . . . . . . . . . .

"He felt that Patton put him on these medications for punishment and that is, again, *something you can discuss and consider as to whether Mr. Bolden does realize he does need these medications.*

"• . . . . . . . . . . . . . . . .

"I think it's very clear that he is and *he's a danger again because* of all the things we talked about, the poor judgment, the failure of insight into his illness, *the failure to realize the need for medication.* [¶] If you don't believe that you have an illness, you won't take your medication.

"...........................

"If you don't believe that he's okay, walk him out the door. But think about what's going to happen. He's going to have that $50 outside the door of Patton. Then what? *That's what you have to look at. Has he taken his medication?*" (Italics added.) As demonstrated by these excerpts, here the People explicitly directed the jury's attention to the effect and frequency of Bolden's medication and told the jury, "That's something for you to consider" and "That's what you have to look at. Has he taken his medication?" Similarly, in his closing, Bolden's attorney stated: "I think if you look at the recent history there is definitely compliance with taking medication. There is definitely not violent behavior." Thus, although the instructions did not expressly advise the jury it could consider Bolden's medicated condition in assessing his dangerousness, it is apparent the People and Bolden not only each introduced substantial evidence on the issue, but each argued the point as if the requested instruction, in a correct form, had been given. Under all the circumstances, the jurors must have understood they should take into account the effect of Bolden's use of psychotropic medication and the likelihood of his continued self-medication, topics which each party argued without objection. (See *People* v. *Brown, supra* , 45 Cal.3d at p. 1256.) In light of the strength of the People's evidence that Bolden would not self-medicate and the scarce evidence to the contrary which Bolden offered from a recreational therapist and nurse, we are satisfied the jury understood its mission and completed it properly. On this record, no reasonable jury could have concluded, by a preponderance of the evidence, that Bolden would continue to self-medicate without fail in a completely unsupervised environment. Although the instruction was incomplete, there was no harm. (*People* v. *Nguyen, supra*, 204 Cal.App.3d at p. 189.)

*Future Dangerousness*

In *People* v. *Williams,* this court said "[a]n individual's present condition is the focus of a commitment proceeding, not his or her behavior under future changes." (*People* v. *Williams, supra*, 198 Cal.App.3d at p. 1481.) Latching ahold of this phrase out of context, Bolden contends the People committed reversible error by referring to his propensity for future dangerous behavior when, in closing argument, the prosecutor said, "Again, they feel that if he did take—stop taking his medications that he would decompensate. . . . That's what they have seen over the past ten years and that's what would happen again."

We reject Bolden's contention for several reasons. First, Bolden's assertion is internally inconsistent. On the one hand, Bolden contends the jury must be instructed to consider whether he will continue to self-medicate if

unsupervised in the future. Now, however, he contends the jury should not be able to consider the equally relevant counterpart—whether he will be dangerous in the future. Bolden cannot have it both ways. The issue under section 1026.5(b) is whether Bolden "represents" a substantial danger of physical harm to others. In making this determination, the jury must be able to appropriately consider whether, based upon his *present* condition, he poses such a danger if placed in an unsupervised environment. Here, not only did the prosecutor direct the jury's attention to the relevant inquiry, she later told the jury, "We don't want you to speculate." Accordingly, there was no improper argument.

DISPOSITION

The order is affirmed.

Kremer, P. J., and Todd, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 23, 1990.