[No. C007592. Third Dist. June 30, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIAN DAVID FRYE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II-VIII.

**COUNSEL**

Thomas Lundy, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Michael Weinberger and Joel Carey, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SPARKS, Acting P. J.**—In this case of murder and attempted murder, the trial court instructed the jury that a killing or attempted killing was unlawful unless it was either excusable or justifiable. It went on to instruct the jury that "[i]t is undisputed in this case that each of the acts in question was an unlawful act." Defendant contends that by this instruction the trial court improperly directed the jury's verdict on disputed factual issues. We reject this contention in the published portion of this opinion. As we shall explain, the word "unlawful" in the various homicide instructions simply means that there was no excuse or justification for the killing. In this sense it is a negative rather than an affirmative element of the homicide offenses. Because there was no issue of excuse or justification tendered or raised in this case, the trial court did not direct a verdict on either an affirmative element of the charged crimes or on a defense to those crimes.

Defendant Brian David Frye appeals from a judgment sentencing him to state prison after a jury found him to be guilty of the first degree murder of William Edward Massey, Jr., with the personal use of a firearm, and of the attempted murder of Jennifer Lynn Bothun, with the personal use of a firearm and in which he intentionally inflicted great bodily injury. (Pen. Code, §§ 187, 664/187, 12022.5, 12022.7.) In addition to the directed verdict

issue, defendant further contends: (1) the felony-murder instructions did not require the jury to find that an intent to commit robbery preceded the killing; (2) the court erred in failing to instruct on unconsciousness; (3) the jury instruction on express malice was erroneous; (4) the court failed to require jury unanimity with respect to an act of robbery for application of the felony-murder rule; (5) the failure to grant testimonial immunity to a defense witness violated principles of due process; (6) the court failed to consider intoxication in mitigation at sentencing; and (7) only one sentence enhancement for the use of a firearm may be imposed. We consider these remaining contentions in the unpublished portion of this opinion and there agree with defendant's last contention and shall modify the judgment accordingly. In all other respects we shall affirm.

## FACTS

The murder victim, William Massey, Jr., was a seller of methamphetamines. The victim of the attempted murder, Jennifer Bothun, was Massey's girlfriend. Defendant was one of Massey's customers. In the months before the murder Massey had sold drugs to defendant on credit and had become infuriated when defendant failed to pay his debt. In fact, Massey had refused to sell any more drugs to defendant until he paid his debt.

In the early morning hours of January 24, 1988, Bothun and Massey were together when Massey's electronic paging beeper sounded. It signalled a telephone number and defendant's customer code. Massey called defendant. Bothun heard Massey ask if defendant had the money he owed and then ask where to meet. Massey told Bothun that before he took her home they would meet defendant at a school parking lot to pick up some money.

When Massey and Bothun arrived at the school they could not locate defendant. After unsuccessfully looking for him they began to drive away but then saw him in the parking lot and returned. Bothun leaned over and unlocked the passenger door as defendant approached Massey's truck. Defendant began shooting into the truck. At first he shot through the closed window but then opened the door and fired again. Defendant fired numerous shots into the truck. The shots killed Massey and seriously wounded Bothun. Bothun blacked out.

When Bothun regained consciousness defendant was going through Massey's jacket pockets. Defendant pushed Massey's body to the floor of the truck and began driving away. For a time Bothun acted as though she was dead but eventually she sat up and pleaded with defendant not to kill her. Defendant pointed his gun at Bothun. She grabbed the barrel and pushed it

away. Defendant began struggling with Bothun for the gun and as he did so it discharged into his fingers. Bothun grabbed the steering wheel and caused defendant to stop the truck. As they struggled for the gun Bothun grabbed the truck keys and threw them out. Defendant retrieved the keys and attempted to put them in the ignition but Bothun hit his hands and caused him to drop them. Throughout this ordeal defendant intermittently attempted to strangle Bothun.

Bothun's screams attracted the attention of a number of people, including Woodrow Lloyd, a nearby resident. Lloyd told his son and his roommate to call the police, then he armed himself and went out to the truck. He pulled defendant out of the truck and placed himself between defendant and the truck. Defendant told Lloyd that he and his girlfriend had been drinking and were having a problem and that it was none of his business. Defendant tried to get around Lloyd and back to the truck but Lloyd would not let him do so. Lloyd pulled out his gun and told defendant that he had called the police and that defendant was not going to get back to the truck until they arrived. Defendant fled on foot.

As defendant ran home he hid certain items of evidence, including a holster, bullets, and items of clothing, in residential yards. When he arrived home he concealed his injury from his mother and hid his gun in the crawl space above the kitchen. He called his father for help and said that his fingers had been shot off. Before defendant's father could take him to the doctor, police officers arrived to arrest him. Defendant asked the arresting officers to take him to the hospital and said that he had a firecracker go off in his hand. This was also the explanation defendant gave to the doctor who treated his wounds at the hospital.

The defense questioned defendant's mental state at the time of the crimes. Defendant testified to drug and alcohol abuse in the few days preceding the incident. He said that he had not slept for a long period before the crimes. He claimed to remember little about the actual incident. A defense expert testified to the effects that substance abuse can have on a person's mental state. Based upon defendant's version of the events, he opined that defendant had an impaired mental state at the time of the crimes.

DISCUSSION

I

Defendant contends that the trial court essentially directed a verdict against him by giving special instruction No. six. This challenged instruction reads: "In these instructions, in the definitions of the crimes in question, the

word 'unlawful' is used. A killing, or an attempted killing, or the use of force or violence, or the attempted use of force or violence is considered in the law to be unlawful unless it is excusable, for example, because it was committed by accident, or justifiable, for example, because it was committed in self defense. It is undisputed in this case that each of the acts in question was an unlawful act." Defendant contends that by giving this instruction the court failed to require the jury to find each element of the charged offenses. (See *People* v. *Hedgecock* (1990) 51 Cal.3d 395, 407 [272 Cal.Rptr. 803, 795 P.2d 1260]; *People* v. *Figueroa* (1986) 41 Cal.3d 714, 726 [224 Cal.Rptr. 719, 715 P.2d 680].)

Murder is defined as the "unlawful killing of a human being, or a fetus, with malice aforethought." (Pen. Code, § 187, subd. (a).) ▇ The corpus delicti of the crime of murder "consists of two elements, the death of the alleged victim[ ] and the existence of some criminal agency as the cause, either or both of which may be proved circumstantially or inferentially." (*People* v. *Cullen* (1951) 37 Cal.2d 614, 624 [234 P.2d 1]; see also *Matthews* v. *Superior Court* (1988) 201 Cal.App.3d 385, 392 [247 Cal.Rptr. 226].)[1] Indeed, when a killing is proved to have been committed by the defendant, and nothing further is shown, the presumption of law is that it was malicious and an act of murder. (*People* v. *Craig* (1957) 49 Cal.2d 313, 319 [316 P.2d 947].) In those circumstances, defendant bears the burden of raising the affirmative defense of excuse or justification. "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon the defendant, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." (Pen. Code, § 189.5, subd. (a) [formerly § 1105].) While this provision would appear to place the burden of proof upon the defendant with respect to mitigation, excuse or justification (*People* v. *Cardoza* (1943) 57 Cal.App.2d 489, 494 [134 P.2d 877]), it has long been established that the defendant need only raise a reasonable doubt with respect to those matters. (*People* v. *Deloney* (1953) 41 Cal.2d 832, 841 [264 P.2d 532]; *People* v. *Albertson* (1944) 23 Cal.2d 550, 587 [145 P.2d 7]; *People* v. *Wells* (1938) 10 Cal.2d 610, 622 [76 P.2d 493].) Thus, under

---

[1]In the view of Professor Perkins, "[t]here is no great objection to saying that the corpus delicti of murder is made up of two components, the death of one as a result and the criminal agency of another as the cause, with the understanding that all homicide is presumed to have resulted from criminal agency until and unless the evidence shows otherwise; but it would be much more realistic, and entirely in line with the actual result of the cases, to recognize frankly that the corpus delicti of murder is homicide. Homicide, of course, is the *actus reus* of murder, and on this analysis the corpus delicti and the *actus reus* would be the same so far as this crime is concerned." (Perkins, *The Corpus Delicti of Murder* (1962) 48 Va.L.Rev. 173, 195, fn. omitted.)

California law the defendant must raise the issue but does not bear any burden of proof or persuasion. (*People* v. *Hyde* (1985) 166 Cal.App.3d 463, 474-475 [212 Cal.Rptr. 440].) "Properly interpreted, section [189.5] merely reflects the commonsense observation that the circumstances of a killing may and often do suggest an inference of malice. Under such circumstances, a prima facie case of murder is established and the burden of producing evidence negating malice falls to the defendant who is, needless to say, in the best position to produce such evidence. Where either the prosecution evidence or evidence presented by the defendant is sufficient to raise a reasonable doubt as to whether the killing was malicious, the prosecution bears the burden of persuading the jury as to the defendant's actual mental state. Where such evidence is nonexistent, however, the prosecution's burden has already been met." (*Id.* at p. 475, fn. omitted [construing Pen. Code, former § 1105, repealed and reenacted as Pen. Code, § 189.5].)

Consequently, in connection with the use of violence against another person in a homicide case, the word "unlawful" is a term of art. It connotes a homicide with the absence of factors of excuse or justification. As the trial court aptly noted, excuse is best exemplified by accident or misfortune (Pen. Code, § 195), and justification is exemplified by the concept of self-defense (Pen. Code, §§ 197-198), although these are not the exclusive bases for excuse or justification.[2] In the absence of factors of excuse or justification, the use of fatal physical force or violence against another person is unlawful. This is not a presumption; rather, it is a rule of substantive law. (See *Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 265 [198 Cal.Rptr. 145, 673 P.2d 732]; *People* v. *Dillon* (1983) 34 Cal.3d 441, 474-476 [194 Cal.Rptr. 390, 668 P.2d 697].) ■ A presumption permits or requires an ultimate fact to be found based upon the existence or nonexistence of certain predicate facts. In contrast, the use of force or violence against another person is not presumed to be unlawful in the absence of excuse or justification; it is unlawful by definition. (*Ibid.*) Thus, as used in various homicide instructions, the word unlawful does not signify an affirmative element of the offenses. ■■ It is instead a negative element which simply means there is an absence of excuse or justification. (*People* v. *Saille* (1991)

---

[2]For example, homicide done under a valid public authority, such as execution of a death sentence or killing an enemy in time of war, would not be unlawful. (See Perkins & Boyce, Criminal Law (3d ed. 1982) p. 1093.) Under appropriate circumstances, homicide committed in defense of habitation or of other persons or to suppress a riot or to capture a fleeing felon would not be unlawful. (Pen. Code, §§ 196-198.) In very limited circumstances consent or condonation will render lawful that which otherwise would constitute unlawful homicide. (Pen. Code, § 187, subd. (b).) Excuse or justification may be raised in other forms depending upon the circumstances of a particular case.

54 Cal.3d 1103, 1115 [2 Cal.Rptr.2d 364, 820 P.2d 588]; *People* v. *Stress* (1988) 205 Cal.App.3d 1259, 1268 [252 Cal.Rptr. 913].)[3]

█ Excuse and justification are regarded as matters of defense. This does not mean that the burden of proof is shifted to the defendant. What it does mean is that in the absence of evidence supporting excuse or justification or of defense reliance upon such matters, theories of excuse or justification are not regarded as pertinent to the charged offense. Under such circumstances a trial court need not, and in fact should not, burden the jury with instructions on such matters. (See *People* v. *Wickersham* (1982) 32 Cal.3d 307, 325 [185 Cal.Rptr. 436, 650 P.2d 311] [the rule ensures that the jury's attention is properly focused on relevant legal theories]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 716-717 [112 Cal.Rptr. 1, 518 P.2d 913] [it would be unduly burdensome to require trial judges to glean legal theories and winnow the evidence for remotely tenable and sophistical instructions]; *People* v. *Bynum* (1971) 4 Cal.3d 589, 604 [94 Cal.Rptr. 241, 483 P.2d 1193] [instructions not justified by the facts of the case tend to overburden and confuse jurors]; *People* v. *Wade* (1959) 53 Cal.2d 322, 333 [1 Cal.Rptr. 683, 348 P.2d 116] [same].)

There is an apparent inconsistency between the rule relied upon by defendant and the rule we have just explicated. The rule relied upon by defendant, simply stated, is that no matter how compelling or undisputed the evidence may be, a trial court may not interfere with the jury's function of finding all of the elements of a charged offense beyond a reasonable doubt. (See *People* v. *Hedgecock*, *supra*, 51 Cal.3d at p. 407; *People* v. *Figueroa*, *supra*, 41 Cal.3d at p. 733.) The most obvious violations of the rule would occur where a court enters judgment against the defendant without submission to the jury or directs the jury to come forward with a verdict against the defendant. (*Connecticut* v. *Johnson* (1983) 460 U.S. 73, 84 [74 L.Ed.2d 823, 832, 103 S.Ct. 969].) The more subtle and frequently encountered violations concern the use of presumptions which the jury may take to be conclusive and which are the functional equivalent of a directed verdict. (*Ibid.*)

█ But the instructional use of presumptions and inferences does not invariably compel reversal. In some instances what is thought to be a

---

[3]In *People* v. *Saille*, *supra*, the Supreme Court quoted this court's decision in *People* v. *Bobo* (1990) 229 Cal.App.3d 1417 [3 Cal.Rptr.2d 747], at page 1441, in which we cited *People* v. *Stress*, *supra*, 205 Cal.App.3d 1259, for the proposition: "The adverb 'unlawfully' in the express malice definition means simply that there is no justification, excuse, or mitigation for the killing recognized by law." In fact, the lawful/unlawful distinction in the law of homicide is restricted to questions of excuse and justification. Mitigation does not render homicide lawful, but may reduce responsibility for an unlawful killing from murder to manslaughter. (Pen. Code, § 192. See *People* v. *Bobo*, *supra*, 229 Cal.App.3d at p. 1440.)

conclusive presumption actually defines the offense as a matter of substantive law. (See *Burg* v. *Municipal Court, supra,* 35 Cal.3d at p. 265 [Vehicle Code provision prohibiting driving a vehicle with a blood-alcohol level of .10 (now .08) percent or more does not create a presumption of intoxication but defines an offense]; *People* v. *Dillon, supra,* 34 Cal.3d at pp. 474-476 [felony-murder rule does not presume malice aforethought but defines an offense].) In other instances the use of a conclusive presumption will not deprive the defendant of a jury determination on all elements of the offense if the jury is required to find the predicate facts beyond a reasonable doubt and if the "presumed" fact is necessarily established by the existence of the predicate facts. (See *Carella* v. *California* (1989) 491 U.S. 263, 266 [105 L.Ed.2d 218, 222, 109 S.Ct. 2419].) And, instructions which permit but do not require the jury to find the existence of an ultimate fact from certain predicate facts are not impermissible. (*Francis* v. *Franklin* (1985) (471 U.S. 307, 316-317 [85 L.Ed.2d 344, 354-355, 105 S.Ct. 1965].) The question is whether, in light of all of the jury instructions, the jury might have understood that the court was directing it to find an essential factual element of the charged offense. (*Ibid.*)

Taken to a logical extreme with respect to affirmative defenses, the rule relied upon by defendant would impose an onerous instructional burden upon trial courts in every homicide case. In every homicide case a trial court would be required to instruct the jury on every legally accepted excuse or justification for homicide, regardless of its factual relevance. For example, the court would be required to instruct the jury that homicide is not unlawful if committed by a soldier in time of war, in the execution of a death sentence by a duly constituted executioner, or if the deceased was a fetus and the mother consented. But the rule has never been extended so far. Issues which by their nature are matters of defense are not encompassed within the rule. (*Martin* v. *Ohio* (1987) 480 U.S. 228, 233-235 [94 L.Ed.2d 267, 273-275, 107 S.Ct. 1098]; *Patterson* v. *New York* (1977) 432 U.S. 197, 209-210 [53 L.Ed.2d 281, 291-292, 97 S.Ct. 2319].)

In *Patterson* v. *New York, supra,* it appeared that under New York law a defendant could be found guilty of murder if the prosecution established beyond a reasonable doubt that he intended to kill another person and caused the death of that person or another, but that the crime could be mitigated to manslaughter if the defendant established by a preponderance of the evidence that he acted under extreme emotional disturbance. The United States Supreme Court upheld the procedure, holding that constitutional requirements are satisfied if the prosecution is required to prove all of the essential elements of the offense and that "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required; . . ." (432 U.S. at p.

210 [53 L.Ed.2d at p. 292].) Similarly, in *Martin* v. *Ohio, supra*, the court held that a state may impose upon a defendant the burden of producing evidence and of proving matters of excuse or justification, including self-defense. (480 U.S. at pp. 233-235 [94 L.Ed.2d at pp. 273-275].) Specifically, the court rejected the defendant's contention "that there can be no conviction under Ohio law unless the defendant's conduct is unlawful and that because self-defense renders lawful what would otherwise be a crime, unlawfulness is an element of the offense that the state must prove by disproving self-defense." (*Id.* at p. 235 [94 L.Ed.2d at p. 275].)[4]

■ As the Court of Appeal explained in *People* v. *Bolden* (1990) 217 Cal.App.3d 1591 [266 Cal.Rptr. 724], "[i]t is constitutional to require a criminal defendant to bear the burden of proving an affirmative defense by a preponderance of the evidence. In this context, an affirmative defense is one which presumes the prima facie elements of the crime are true, but exculpates the defendant because of excuse or justification. Stated another way, in this context an affirmative defense is one which does not negate any element of the crime, but is new matter which excuses or justifies conduct which would otherwise lead to criminal responsibility. For example, necessity is a defense which admits, for the sake of argument, the elements of the charged offense, but offers a justification to avoid criminal culpability. As such, it is an affirmative defense which the defendant must prove by a preponderance of the evidence. [¶] In contrast, some defenses do not admit the elements of the crime, but instead serve to overcome or negate such proof. For example, alibi negates an element of the People's case—identity. Similarly, voluntary intoxication negates proof of an element of some crimes—specific intent. Where the defense would necessarily negate an essential element of the crime charged, the state may not constitutionally place the burden of persuasion on that issue upon the defendant." (*Id.* at p. 1601, citations omitted.)

■ In California we impose only the most minimal burden upon a defendant with respect to excuse or justification. All that is required is that there be some evidence supportive of excuse or justification or that the defendant in some manner inform the court that he is relying upon such a

---

[4]While a state may impose the burden of proving affirmative defenses upon the defendant, this does not mean that the state can use such a procedural device to lessen the prosecution's burden of proving all of the affirmative elements of the offense beyond a reasonable doubt. (*Martin* v. *Ohio, supra*, 480 U.S. at pp. 233-234 [94 L.Ed.2d at p. 274]; *Patterson* v. *New York, supra*, 432 U.S. at p. 210 [53 L.Ed.2d at p. 292].) For example, evidence which tends to establish an affirmative defense may also tend to negate an element of the charged offense, such as specific intent. Instructions which impose upon the defendant the burden of proving the defense will be considered erroneous if they limit the jury's consideration of the evidence as it relates to specific intent or in any other way lessens the prosecution's burden of proof on that issue. (*Ibid.*)

defense. In such a case the jury must be instructed on the defense and the prosecution bears the burden of disproving it beyond a reasonable doubt. However, if neither factor is present then excuse and justification are irrelevant to the case and the jury need not be instructed on such matters. Under this scheme we treat the absence of excuse or justification, and hence the question of unlawfulness, as an element of an offense only if such a defense is raised in some manner. This is not an impermissible dichotomy under the Constitution. "Our opinions suggest that the prosecution's constitutional duty to negate affirmative defenses may depend, at least in part, on the manner in which the State defines the charged crime. . . . These decisions, however, do not suggest that whenever a State requires the prosecution to prove a particular circumstance beyond a reasonable doubt, it has invariably defined that circumstance as an element of the crime. A State may want to assume the burden of disproving an affirmative defense without also designating absence of the defense an element of the crime. The Due Process Clause does not mandate that when a State treats absence of an affirmative defense as an 'element' of the crime for one purpose, it must do so for all purposes." (*Engle* v. *Isaac* (1982) 456 U.S. 107, 120 [71 L.Ed.2d 783, 795-796, 102 S.Ct. 1558].)

It is in this light that we must review the jury instructions in this case. The circumstances of this case which we find relevant in our review are: (1) There was no evidence to suggest any form of excuse or justification. (2) Defendant did not object to the court's special instruction and did not otherwise indicate that he was relying upon excuse or justification. (3) In argument to the jury defendant conceded the unlawfulness of his conduct. After noting that one psychological author had suggested that a person in a drug-induced blackout is not truly responsible for his conduct, counsel said: "Fine. If that were literally true then I can say [defendant] is not guilty, okay, but I'm not going to say that to you. I'm not going to say he's not guilty. I'm not going to try and tell you he's not responsible for these shootings because he is responsible, and there is some price he has to pay for them. [¶] But I am trying to tell you it's—simply that from all the circumstances available for us to know at this point, all of those circumstances clearly points [*sic*] to the conclusion and the fact he did not deliberate, he did not premeditate, and he may not have even had malice aforethought."

We have noted that the concept of unlawfulness in a homicide case simply signifies the absence of excuse or justification and that excuse and justification are affirmative defenses which need not and should not be put before the jury in the absence of some evidence supporting them or defense reliance upon them. Since there was no issue of excuse or justification here, the concept of unlawfulness was superfluous to the charged offenses. In instructing a jury it is proper for a trial court to explain and define terms which

might otherwise lead to confusion. (*People* v. *Failla* (1966) 64 Cal.2d 560, 565 [51 Cal.Rptr. 103, 414 P.2d 39]; *People* v. *Smith* (1978) 78 Cal.App.3d 698, 710 [144 Cal.Rptr. 330].) This is what the court did by explaining to the jury that the word unlawful means without excuse or justification and that there was no issue in this case with respect to those defenses. Since those defenses are not elements of the offenses which the prosecution is required to prove unless they are properly raised, we do not find the instruction to have been erroneous in the circumstances presented.

■ It is not enough that, considered in isolation, a particular instruction is valid and appropriate. We must also consider the instructions as a whole to determine what they would mean to a reasonable juror. (*Francis* v. *Franklin*, *supra*, 471 U.S. at pp. 315-316 [85 L.Ed.2d at p. 354]; *People* v. *Bunyard* (1988) 45 Cal.3d 1189, 1230 [249 Cal.Rptr. 71, 756 P.2d 795].) A technically correct instruction will nevertheless be considered erroneous if in light of other instructions it could cause a reasonable jury to believe that it was required to find against the defendant on an essential element of the offense (*Sandstrom* v. *Montana* (1979) 442 U.S. 510, 524 [61 L.Ed.2d 39, 51, 99 S.Ct. 2450]), that the burden had shifted to the defendant with respect to an essential element of the offense (*ibid.*), or that its consideration of all of the evidence with respect to an essential element of the offense was restricted (*Martin* v. *Ohio*, *supra*, 480 U.S. at pp. 233-234 [94 L.Ed.2d at p. 274]).

■ Upon consideration of the instructions as a whole we do not find that a reasonable jury would have been misled by the court's special instruction. The court fully instructed the jury with respect to each element of the charged offenses and lesser-included offenses and with respect to every defensive matter raised. The instructions made it clear that the prosecution bore the burden of proof with respect to all issues and that a reasonable doubt as to any issue would preclude a finding against defendant on the charge to which that issue related. The court's special instruction merely informed the jury that there was no issue presented with respect to excuse or justification; it did not tend to operate as the functional equivalent of a directed verdict with respect to any of the charges of which defendant stands convicted.

In any event, even if we were to assume that the court's special instruction was erroneous, we would conclude that the error was harmless here. In *Carella* v. *California*, *supra*, 491 U.S. at pages 266 and 267 [105 L.Ed.2d at page 222], the court held that where a jury is erroneously instructed with respect to a conclusive presumption but it appears that no reasonable jury could find the predicate facts without also finding the presumed fact, then the instruction is superfluous and does not compel reversal. In this case the

absence of any issue of excuse or justification rendered the concept of unlawfulness superfluous. No rational jury could have found that the use of violence upon the victims was lawful, nor was there any basis for even considering the question. Even if the special instruction is considered erroneous, the jury was still required to find every fact necessary to establish every essential element of the offenses beyond a reasonable doubt. (*Ibid.*)

Moreover, in *Connecticut* v. *Johnson, supra,* 460 U.S. at page 87 [74 L.Ed.2d at pages 834-835], the court held that a defendant may be found to have conceded the issue in question by the nature of the defense presented or by other conduct, in which event an error of this nature would not be prejudicial. In this case defendant conceded the unlawfulness of the use of violence against the victims by express concession as well as by failing to raise excuse or justification in any manner. Any error in the court's special instruction was therefore harmless.

### II-VIII*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

The judgment is modified to provide that defendant shall serve only one enhancement for the use of a firearm pursuant to Penal Code section 12022.5. As modified and in all other respects the judgment is affirmed. The trial court is directed to forward an amended abstract of judgment to the Department of Corrections.

Scotland, J., and Nicholson, J., concurred.

A petition for a rehearing was denied July 27, 1992, and appellant's petition for review by the Supreme Court was denied September 16, 1992.

---

*See footnote, *ante*, page 1148.