[No. B055658. Second Dist., Div. Seven. Dec. 7, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY DESHAWN SNEAD, Defendant and Appellant.

## COUNSEL

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Marc E. Turchin and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—Convicted by jury of first degree murder (Pen. Code,[1] §§ 187, 189; count I) with two special circumstances found true (§ 190.2, subds. (a)(6) and (a)(17)), arson causing great bodily injury (§ 451, subd. (a); count II), arson of an inhabited structure (§ 451, subd. (b); count III), explosion of a destructive device causing death (§ 12310, subd. (a); count IV), and explosion of a destructive device causing bodily injury (§ 12309, count V) appellant contends the trial court committed instructional errors and the evidence is insufficient to sustain one of the special circumstances ("delivery" of a destructive device, § 190.2, subd. (a)(6)). We find no prejudicial error and affirm the judgment.

### FACTUAL BACKGROUND

There being no insufficiency of evidence claim (except concerning a special circumstance), we synopsize the evidence. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

Three people were involved in the subject offenses. Each was tried separately. The evidence at appellant's trial, concerning the offenses, duplicated that of one of his confederates. On his appeal we provided this

---

[1]Statutory references, unless otherwise noted, are to the Penal Code.

summary: "It was about 11:30 p.m., July 3, 1988, when Lisa Lee and her [two-and-a-half]-year-old son Dionsa returned home after an evening at grandmother's house. Lisa gave Dionsa a bath and brought him to his bedroom—the front bedroom, closest to the street. The lights were on and only thin curtains covered the two windows. By now it was almost midnight, Dionsa, naked from his bath, was on his bed jumping up and down. Lisa was reaching for her son's pajamas, her side to the windows, when she heard the window break. She looked at the window and saw a second 'cocktail'—a 'fireball'—fly into the room and roll under the bed. The bed went up in flames and she heard her 'little boy screaming 'cause he couldn't get off the bed.' Dionsa was burning from the neck down. He jumped off the end of the bed and ran into the hall. Lisa ran after him, tripped him, and by patting him and lying on top of him, put out the flames. With her boyfriend's help, she carried Dionsa outside. He was 'still sizzling'—you could hear it.

"Paramedics transported Dionsa to Martin Luther King Hospital. After a few hours he was transferred to the UCLA Burn Center and then, after a few days, to the burn institute in Boston. He died there on July 14." (*People* v. *Thompson* (1992) 7 Cal.App.4th 1966, 1969 [10 Cal.Rptr.2d 15].)

On July 19, 1988, appellant was interviewed by investigating officers. After initial denials, he admitted that he and two friends, and fellow gang members, had filled forty-ounce beer bottles with gasoline, inserted rag wicks in them, ignited them, and threw them through the victim's bedroom window. Appellant stated it was Leonard Nixon, not him, who threw the two lighted gasoline-filled bottles into the victim's house. He stated his bottle was not lit and he dropped, not threw, it.

### DISCUSSION

1. *Appellant contends there is insufficient evidence he "delivered" a destructive device within the meaning of section 190.2, subdivision (a)(6).*

One of the alleged special circumstances was section 190.2, subdivision (a)(6). In pertinent part it reads: "The murder was committed by means of a destructive device . . . that the defendant . . . *delivered* . . . and the defendant knew or reasonably should have known that his . . . act . . . would create a great risk of death to a human being. . . ." (Italics added.)

■ Appellant contends that "delivered" does not include *throwing* and therefore the evidence is insufficient to sustain the special circumstance finding. He relies on *People* v. *Clark* (1990) 50 Cal.3d 583 [268 Cal.Rptr. 399, 789 P.2d 127].

Although *People* v. *Clark* involved the subject special circumstance, the facts concerned not a destructive device, as here, but an explosive. Clark had thrown gasoline into the victims' home and then threw highway flares which ignited not the gasoline but gasoline vapors. The People argued Clark had *delivered an explosive.*

The Supreme Court rejected the argument because neither gasoline nor flares satisfied the definition of an explosive. (50 Cal.3d at pp. 601-605.) Then—in a passage relied upon by appellant—the court stated:

"Therefore, even were we persuaded that in this context the electorate intended something other than the common meaning of 'deliver'—'to take and hand over to or leave for another' which we address below, it is clear that the defendant did not deliver an 'explosive.'

"The People also fail to propose a theory under which defendant's use of gasoline vapor could be deemed to meet the further requirement of subdivision (a)(6) of section 190.2 that murder be committed by means of an explosive 'that the defendant mailed or delivered, attempted to mail or deliver, or cause[d] to be mailed or delivered, . . .' Assuming arguendo that throwing a substance through a window or door constitutes 'delivery' within the meaning of subdivision (a)(6), the substance that defendant threw was not, as we have shown, an explosive. It was gasoline. The gasoline vapor was not 'delivered.' It arose by an independent physical process after the gasoline was thrown into the home. And the vapor alone was not explosive until it combined with air in the required proportion. Manifestly, defendant did not deliver the air that was already present in the victims' home. Thus, even if gasoline vapor were an explosive, or the manner in which gasoline is used were a basis for considering it an explosive, defendant could not be found to have killed by means of *delivery* of an explosive, and thus his conduct was not conduct described in subdivision (a)(6)." (*People* v. *Clark*, *supra*, 50 Cal.3d at pp. 604-605, original italics.)

It is clear from this passage that *Clark* did not decide whether "deliver" includes throwing. Rather than decide the matter, *Clark* assumed "arguendo that throwing a substance through a window . . . constitutes 'delivery'." (50 Cal.3d at p. 605.)

Its intimation that the only common meaning of deliver is to "hand over" or "leave" was neither necessary for its decision nor accurate. As Justice Kaufman noted in his concurring and dissenting opinion: "[T]he majority's characterization of the word 'deliver' is overly restrictive and unduly pejorative. Presuming a defendant kills with a 'true' explosive, does the majority

really mean to say he would be death eligible only if he walked up the sidewalk and put the explosive directly into either the mailbox or the recipient's hands? I think not. (See Webster's New Internat. Dict. (2d ed. 1957) p. 693: 'deliver' means 'To give or put forth in action or exercise; to discharge; as, to *deliver* a blow; to *deliver* a broadside or a ball.' 'Delivery' means 'Act or manner of sending forth, discharging, or throwing . . . .')" (50 Cal.3d at p. 649, original italics.)

We are further persuaded that the Legislature intended "deliver" to include *throwing* (and *shooting*) by its definition of destructive device. The term includes "[a]ny projectile . . . including . . . tracer or incendiary ammunition" (§ 12301, subd. (a)(1)), "[a]ny grenade, explosive missile, or similar device or any launching device therefor" (§ 12301, subd. (a)(2)), any ammunition of a caliber greater than .60 (§ 12301, subd. (a)(3)), any rocket-propelled projectile with a diameter greater than .60 inch (§ 12301, subd. (a)(4)), and "[a]ny breakable container which contains a flammable liquid with a flashpoint of 150 degrees Fahrenheit or less and has a wick or similar device capable of being ignited . . ." (§ 12301, subd. (a)(5).)

Such destructive devices are—*inherently*—shot, launched, and thrown. To constrict "deliver" to mean only "hand over" or "leave" is to nullify the statute rather than "effectuate the purpose of the law." (*West Pico Furniture Co.* v. *Pacific Finance Loans* (1970) 2 Cal.3d 594, 607 [86 Cal.Rptr. 793, 469 P.2d 665].)

We hold that, within the meaning of section 190.2, subdivision (a)(6), "delivers" includes *throwing*.

2. *Appellant contends the trial court erred in defining "delivery" to the jury.*

As part of its special circumstance instructions the trial court gave the following (prosecutor drafted) special instruction: "Throwing a substance through a window constitutes 'delivery.'"

Appellant contends the instruction "directed a verdict on the delivery element and usurped the jury's exclusive fact-finding province." We disagree.

"In instructing a jury it is proper for a trial court to explain and define terms which might otherwise lead to confusion." (*People* v. *Frye* (1992) 7

Cal.App.4th 1148, 1159-1160 [10 Cal.Rptr.2d 217].) "Delivery" was such a term.[2]

But in explaining or defining a term—which is an offense element—a trial court must exercise care. The " 'law/fact' distinction" (*People* v. *Figueroa* (1986) 41 Cal.3d 714, 733 [224 Cal.Rptr. 719, 715 P.2d 680]) is elusive and easily breached.

We agree with appellant that the subject instruction was not a model. It was fact intrusive. More appropriately, and neutrally, the trial court might have stated: "For purposes of the special circumstance, one may 'deliver' a destructive device by throwing it."

Any error in the trial court's instruction was harmless. Its reference to throwing a substance *through a window* included a fact that was not in dispute. Appellant's extrajudicial statements, Lisa Lee's percipient testimony, and circumstantial evidence established that the destructive devices entered through—and broke—the window. The defense did not contend otherwise. No reasonable jury could have doubted the fact. (See *People* v. *Frye, supra,* 7 Cal.App.4th 1148, 1160-1161.)

3. *Appellant contends the trial court erred in failing to sua sponte give a unanimity instruction (CALJIC No. 17.01).*

The trial court instructed the jury that the special circumstances could be found true if defendant was "the actual killer, a co-conspirator or an aider or abetter." (CALJIC No. 8.80.) Appellant contends the trial court should have instructed the jury, sua sponte, that in order to find a special circumstance true "all jurors must agree" (CALJIC No. 17.01) which of the three (actual killer, coconspirator, or aider/abetter) he was.

Appellant finds support in *People* v. *Dellinger* (1984) 163 Cal.App.3d 284, 300-301 [209 Cal.Rptr. 503] and *People* v. *Melendez* (1990) 224 Cal.App.3d 1420, 1433-1434 [274 Cal.Rptr. 599]. But both cases have been persuasively criticized by *People* v. *Davis* (1992) 8 Cal.App.4th 28 [10 Cal.Rptr.2d 381] and, most recently, *People* v. *Sutherland* (1993) 17 Cal.App.4th 602, 609-611 [21 Cal.Rptr.2d 752]. Additionally, our Supreme Court considered the issue in *People* v. *Beardslee* (1991) 53 Cal.3d 68, 92-94 [279 Cal.Rptr. 276, 806 P.2d 1311]. It stated: "[I]t was held in *People* v. *Forbes* (1985) 175 Cal.App.3d 807, 816-817 [221 Cal.Rptr. 275], that a conviction of second degree murder did not require unanimous agreement by the jurors on

---

[2]The trial court defined such other terms as destructive device, malice aforethought, proximate cause, willfully and maliciously, structure, inhabited, "sets fire to," and willfully.

whether the accused was the actual perpetrator or was an aider and abettor. [¶] Defendant urges us to reject the *Forbes* holding." (*People* v. *Beardslee*, *supra*, at pp. 92-93.) Our Supreme Court declined to do so.

We find no error.

4. *Appellant contends the trial court erred in giving its modified CALJIC No. 8.80 instruction.*

The trial court gave the following instruction:

"If you find the defendant in this case guilty of murder of the first degree, you must then determine if one or more of the following special circumstances are true or not true: murder perpetrated by a destructive device and murder in the commission of arson.

"The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true.

"*If you find* beyond a reasonable doubt *that the defendant was either the actual killer*, a co-conspirator, *or an aider or abetter*, but you are unable to decide which, *then you must also find* beyond a reasonable doubt *that the defendant intended either to kill* a human being *or with knowledge of the unlawful purpose of the actual killer to aid and abet another in the killing of a human being* in order to find the special circumstance to be true. On the other hand, if you find beyond a reasonable doubt that the defendant was the actual killer, you need not find that the defendant intended to kill a human being in order to find the special circumstance to be true.

"You must decide separately each special circumstance alleged in this case. If you cannot agree as to all of the special circumstances, but can agree as to one, you must make your finding as to the one upon which you do agree.

"In order to find a special circumstance alleged in this case to be true or untrue, you must agree unanimously.

"You will state your special finding as to whether the special circumstance is or is not true on the form that will be supplied." (CALJIC No. 8.80, modified, italics added.)

██ Appellant parses the first sentence of the third paragraph to mean "that if defendant was found an aider and abettor, intent to kill was [not] required." We disagree.

A similar but inverted argument was made and rejected in *People* v. *Duncan* (1991) 53 Cal.3d 955, 973-974 [281 Cal.Rptr. 273, 810 P.2d 131]. We are satisfied that, as in *Duncan*, there is no "reasonable likelihood" (*People* v. *Benson* (1990) 52 Cal.3d 754, 801 [276 Cal.Rptr. 827, 802 P.2d 330]) a juror would have failed to understand intent to kill was required of an aider/abetter. Such meaning was unmistakable from the second sentence of the third paragraph: "*On the other hand,* if you find . . . the defendant was the actual killer, you need not find that the defendant intended to kill. . . ." (Italics added.)

*5. Appellant contends the trial court erred in not sua sponte giving CALJIC Nos. 2.13 and 2.22.*

Appellant contends the trial court had a sua sponte duty to give a CALJIC No. 2.13[3] instruction (prior consistent or inconsistent statements as evidence). As appellant appears to concede in his reply brief, the law is otherwise. (*People* v. *Griffin* (1988) 46 Cal.3d 1011, 1026 [251 Cal.Rptr. 643, 761 P.2d 103].)

■ Appellant further contends the trial court had a sua sponte duty to give CALJIC No. 2.22[4] (weighing conflicting testimony). *Assuming* there was conflicting evidence,[5] appellant is correct. (*People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 884-885 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845].) But considering all the instructions that were given, 85 pages worth, there was no "reasonable likelihood" (*People* v. *Benson, supra,* 52 Cal.3d 754, 801) of juror misunderstanding caused by the omission. (See, e.g., CALJIC Nos. 2.00, 2.20, 2.21.1, 2.21.2, 2.27, 2.80.) We find no prejudicial error.

---

[3]The instruction reads: "Evidence that on some former occasion, a witness made a statement or statements that were inconsistent [or consistent] with [his] [her] testimony in this trial, may be considered by you not only for the purpose of testing the credibility of the witness, but also as evidence of the truth of the facts as stated by the witness on such former occasion.

"[If you disbelieve a witness' testimony that [he] [she] no longer remembers a certain event, such testimony is inconsistent with a prior statement or statements by [him] [her] describing that event.]"

[4]The instruction reads: "You are not bound to decide an issue of fact in accordance with the testimony of a number of witnesses, which does not convince you, as against the testimony of a lesser number or other evidence, which appeals to your mind with more convincing force. You may not disregard the testimony of the greater number of witnesses merely from caprice, whim or prejudice, or from a desire to favor one side against the other. You must not decide an issue by the simple process of counting the number of witnesses [who have testified on the opposing sides]. The final test is not in the [relative] number of witnesses, but in the convincing force of the evidence."

[5]Appellant argues the evidence was in conflict whether one or two destructive devices were thrown.

6. *Appellant contends the trial court erred in defining "maliciously."*

In defining "maliciously," as used in counts IV and V ("Every person who willfully and *maliciously* explodes . . . any destructive device . . .") the trial court instructed the jury: "The words 'malice' and 'maliciously' mean a wish to vex, annoy or injure another person, or an intent to do a wrongful act." (CALJIC No. 1.22; §§ 7, subd. 4, 450, subd. (e).)

Appellant contends the instruction was erroneous because "in context" "maliciously" means *with intent to kill.* Appellant is mistaken. We expressly held to the contrary in *People* v. *Thompson, supra,* 7 Cal.App.4th 1966, 1971.

7. *Appellant contends the trial court's motive instruction conflicted with intent and malice instructions.*

■ The trial court gave the CALJIC No. 2.51 motive instruction: "Motive is not an element of the crime charged and need not be shown. However, you may consider motive or lack of motive as a circumstance in this case. Presence of motive may tend to establish guilt. Absence of motive may tend to establish innocence. You will therefore give its presence or absence, as the case may be, the weight to which you find it to be entitled."

Appellant contends this instruction conflicted with other instructions concerning intent and malice. He is mistaken.

Motive, intent, and malice—contrary to appellant's assumption—are separate and disparate mental states. The words are not synonyms. Their separate definitions were accurate and appropriate.

DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied December 29, 1993, and appellant's petition for review by the Supreme Court was denied March 3, 1994.