Filed 7/13/15  P. v. Hamilton CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KEITH HAMILTON,<br><br>    Defendant and Appellant. | D066031<br><br><br><br>(Super. Ct. No. SCE333297) |

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Benjamin Boyce Kington, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Keith Hamilton of petty theft.  (Pen. Code, § 484; further statutory references are to the Penal Code.)  Hamilton admitted a prior violent or serious felony conviction under former section 666, subdivision (b)(1); a prison prior under

former section 667.5, subdivision (b); and two strike priors under section 667, subdivision (d). Under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, the trial court dismissed Hamilton's strike priors for all purposes. The court sentenced Hamilton to four years in prison.

Hamilton appeals. He contends (1) the court erred by not instructing the jury sua sponte with CALCRIM No. 358 to view Hamilton's out-of-court statements with caution (or, alternatively, his counsel was ineffective for failing to request such an instruction); (2) the court erred by not instructing the jury sua sponte with CALCRIM No. 332 regarding the evaluation of expert testimony; (3) the court erred by not instructing the jury sua sponte with CALCRIM No. 302 regarding the evaluation of conflicting evidence; and (4) a recently enacted initiative, Proposition 47, applies retroactively and compels resentencing.

During the pendency of this appeal, the trial court resentenced Hamilton as a misdemeanant under Proposition 47. Hamilton's last contention is therefore moot. The remaining errors Hamilton identifies were not prejudicial either singly or together. We affirm the judgment.

FACTS

In August 2013, Hamilton entered a Sears department store in El Cajon, California. Hamilton was carrying two large plastic trash bags full of material. He went to the shoe department and picked up an $85 pair of Esker brand shoes. Hamilton took his own shoes off his feet, put on the Esker shoes, placed his old shoes in the Esker box,

2

and put the Esker box back on the shelf. He stood up and walked around the Sears shoe department.

Vincent Keller and Colleen Dillon, two Sears loss prevention employees, monitored Hamilton's activities from a back office via security cameras. Keller went to the sales floor, where he began to follow Hamilton. Keller made eye contact with Hamilton, and Hamilton saw Keller use his walkie-talkie. Hamilton walked around the store for a time and finally exited the Sears store. When Hamilton was a few feet outside the Sears store, Keller confronted him. Keller said, "Sears security. Loss prevention agent. I see you have some merchandise on that you didn't pay for." According to Keller, Hamilton replied that he thought Keller might give him the benefit of the doubt and let him leave with the shoes. Keller and Dillon escorted Hamilton to their back office and called police. While Keller and Dillon waited for police to arrive, they talked with Hamilton. Dillon recalled that Hamilton told Keller he left the store because he "just needed a new pair of shoes."

At trial, Keller and Dillon testified regarding their observations and interactions with Hamilton. Hamilton testified in his own defense. Hamilton claimed that he saw Keller, knew he was a security guard, and was merely toying with him by leading him around the Sears store. Hamilton testified that he did not leave the store and did not intend to steal the Esker shoes. He said he had money and wanted to buy new shoes. Hamilton would not confirm Keller and Dillon's account of his statements. Instead, Hamilton testified that Keller said, "Well, I know you seen me," to which Hamilton replied, "Yeah. Well that's why I didn't go out there," i.e., leave the Sears store.

3

DISCUSSION

I

Hamilton contends the court erred by not instructing the jury sua sponte with CALCRIM No. 358, including its bracketed portion advising the jury to view evidence of a defendant's unrecorded out-of-court statement with caution. CALCRIM No. 358 provides as follows: "You have heard evidence that the defendant made [an] oral or written statement[s] (before the trial/while the court was not in session). You must decide whether the defendant made any (such/of these) statement[s], in whole or in part. If you decide that the defendant made such [a] statement[s], consider the statement[s], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statement[s]. [¶] [Consider with caution any statement made by (the/a) defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded.]."

At the time of Hamilton's trial, the court had a duty to provide such an instruction: "When evidence is admitted establishing that the defendant made oral admissions, the trial court ordinarily has a sua sponte duty to instruct the jury that such evidence must be viewed with caution." (*People v. Slaughter* (2002) 27 Cal.4th 1187, 1200.) During this appeal, the Supreme Court abrogated this precedent and held that a court should provide such an instruction only upon request. (*People v. Diaz* (2015) 60 Cal.4th 1176, 1190-1191 (*Diaz*).)

Hamilton argues that *Diaz* should not apply retroactively to his trial (see *Diaz*, *supra*, 60 Cal.4th at p. 1195 [reserving question of retroactivity]) and, even if it does, his

4

counsel was ineffective by not requesting CALCRIM No. 358. We need not decide the question of retroactivity because we conclude, like *Diaz*, that any error in not instructing the jury with CALCRIM No. 358 was harmless even assuming the court was required to give the instruction sua sponte. (See *Diaz*, *supra*, 60 Cal.4th at p. 1195.)

We assess prejudice under the standard for state law errors: "[W]hether it is reasonably probable the jury would have reached a result more favorable to defendant had the instruction been given." (*Diaz*, *supra*, 60 Cal.4th at p. 1195, citing *People v. Watson* (1956) 46 Cal.2d 818, 835-836.) "[A] 'probability' in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.)

Here, like *Diaz*, the court provided the jury with other instructions that bear on the jury's assessment of Hamilton's out-of-court statements, including CALCRIM No. 226, regarding the credibility and believability of witnesses. (See *Diaz*, *supra*, 60 Cal.4th at p. 1196.) Like *Diaz*, more than one witness testified to the incriminating nature of Hamilton's statements. (See *id*. at p. 1195.) And, even setting aside Hamilton's statements, the jury heard persuasive evidence of Hamilton's guilt: his decision to put on the Esker shoes and leave his old shoes behind, his act of walking around the store in the Esker shoes, and his subsequent exit from the store. While Hamilton presented a conflicting version of events, it is not reasonably probable that giving CALCRIM No. 358 would have affected the jury's resolution of this conflict given the state of the evidence and the instructions the court in fact provided. (See *Diaz*, *supra*, 60 Cal.4th at p. 1195.) For the same reasons, assuming Hamilton's counsel should have requested

5

CALCRIM No. 358, Hamilton has not shown any prejudice from any alleged incompetence by his counsel. (See *People v. Dickey* (2005) 35 Cal.4th 884, 907.)

II

Hamilton argues the court erred by not instructing the jury sua sponte with CALCRIM No. 332 regarding the jury's evaluation of expert testimony. CALCRIM No. 332 provides, in relevant part, as follows: "(A witness was/Witnesses were) allowed to testify as [an] expert[s] and to give [an] opinion[s]. You must consider the opinion[s], but you are not required to accept (it/them) as true or correct. The meaning and importance of any opinion are for you to decide. In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally. In addition, consider the expert's knowledge, skill, experience, training, and education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion. You must decide whether information on which the expert relied was true and accurate. You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence."

Hamilton contends that Keller and Dillon, by virtue of their training and experience as loss prevention employees, testified as expert witnesses. Specifically, he claims their testimony regarding the suspiciousness of Hamilton's appearance and behavior after entering the Sears store was based on their expertise in loss prevention.

When expert testimony is received in a criminal proceeding, section 1127b requires the trial court to provide an instruction sua sponte regarding the evaluation of such testimony. (*People v. Reeder* (1976) 65 Cal.App.3d 235, 241 (*Reeder*).) However,

6

even assuming Keller and Dillon provided expert testimony, and the trial court was required to provide CALCRIM No. 332, we conclude any error was harmless.

We assess the prejudicial effect of the court's failure to give CALCRIM No. 332 under the *Watson* standard:  whether it is reasonably probable that a result more favorable to Hamilton would have occurred absent the error.  (*Reeder*, *supra*, 65 Cal.App.3d at p. 243.)  We begin with the instructions the court in fact gave.  In this case, the trial court provided CALCRIM No. 226, regarding the credibility and believability of witnesses. The trial court also provided CALCRIM No. 200, which informed the jury they were the exclusive judges of the facts.  Given these instructions, which largely cover the concepts in CALCRIM No. 332, any error in not providing CALCRIM No. 332 was harmless. (See *People v. Lynch* (1971) 14 Cal.App.3d 602, 609-610 [finding error harmless where the jury was instructed they "were the sole and exclusive judges of the facts" and were entitled to "weigh the credibility of any witness"].)  Moreover, the potentially expert testimony provided by Keller and Dillon was relatively unimportant when compared to their percipient testimony regarding Hamilton's actions while in the store.  It is thus not reasonably probable Hamilton would have obtained a more favorable result had CALCRIM No. 332 been given.

III

Hamilton also argues the court erred by not instructing the jury sua sponte with CALCRIM No. 302 regarding evaluation of conflicting evidence.  CALCRIM No. 302 provides as follows:  "If you determine there is a conflict in the evidence, you must decide what evidence, if any, to believe.  Do not simply count the number of witnesses

7

who agree or disagree on a point and accept the testimony of the greater number of witnesses. On the other hand, do not disregard the testimony of any witness without a reason or because of prejudice or a desire to favor one side or the other. What is important is whether the testimony or any other evidence convinces you, not just the number of witnesses who testify about a certain point." While the court has a sua sponte duty to provide CALCRIM No. 302 where, as here, conflicting evidence is presented, the court's error was harmless under the circumstances of this case. (See *People v. Virgil* (2011) 51 Cal.4th 1210, 1261-1262 (*Virgil*) [discussing CALCRIM No. 302's predecessor instruction].)

Again, we assess prejudice under the *Watson* standard for state law errors. (*Virgil*, *supra*, 51 Cal.4th at p. 1262.) The court provided the jury with several instructions bearing on its assessment of the evidence, including CALCRIM Nos. 200 ("Duties of Judge and Jury"), 220 ("Reasonable Doubt"), 222 ("Evidence"), 223 ("Direct and Circumstantial Evidence: Defined"), 224 ("Circumstantial Evidence: Sufficiency of the Evidence"), 225 ("Circumstantial Evidence: Intent"), 226 ("Witnesses"), and 301 ("Single Witness's Testimony"). These instructions properly guided the jury's evaluation of the evidence at trial. (See *Virgil*, *supra*, 51 Cal.4th at p. 1262 ["Considering the instructions as a whole, we are satisfied the jury received ample guidance on how to evaluate conflicting testimony"].)

While none of the instructions specifically told the jury not to make its decision solely based on the number of witnesses testifying for each side, as Hamilton points out, nothing in the record shows that the jury was urged to rely on such a rationale. The

8

prosecutor's references to "two" witnesses in his closing statement merely described the evidence at trial; it was not a suggestion to decide the case based solely on that number. Here, as in *Virgil*, "[t]he prosecutor did not suggest that the jury should decide defendant's guilt by comparing the number of witnesses presented by each side, and there is no evidence the absence of [the instruction] hampered the jury's ability to evaluate the evidence." (*Virgil*, *supra*, 51 Cal.4th at p. 1262 [concluding that analogous error was harmless].) Hamilton's efforts to distinguish *Virgil* are unpersuasive. Under the circumstances of this case, and given the instructions on the evaluation of evidence the court in fact provided the jury, it is not reasonably probable Hamilton would have obtained a more favorable result if CALCRIM No. 302 had been given. (See *ibid.*; see also *People v. Snead* (1993) 20 Cal.App.4th 1088, 1097 [analogous error harmless given other instructions provided by the court].)

We likewise conclude the errors discussed in this section and the previous sections were not prejudicial, even when viewed together, for the reasons we discuss with respect to each error. (See *People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1122; see also *People v. Banks* (2014) 59 Cal.4th 1113, 1208.)

IV

After Hamilton's conviction, the electorate passed Proposition 47, which reduced certain felony offenses to misdemeanors. Hamilton argues that the offense for which he was convicted, petty theft under section 484, is among the offenses covered by Proposition 47 under the facts presented at Hamilton's trial. (See § 490.2, subd. (a).)

Hamilton contends that Proposition 47 is retroactive, that his sentence should be reversed, and that he should be resentenced as a misdemeanant.

During the pendency of this appeal, Hamilton petitioned the trial court for recall of his sentence and resentencing under Proposition 47. (§ 1170.18, subd. (a).) The trial court granted Hamilton's petition and resentenced him as a misdemeanant to 180 days in jail. Since Hamilton has already obtained the relief he requests, this issue on appeal is moot. (See *Consolidated Vultee Aircraft Corp v. United Automobile Aircraft & Agricultural Implement Workers of America Local 904* (1946) 27 Cal.2d 859, 862-863; *Hebert v. Los Angeles Raiders*, *Ltd.* (1991) 23 Cal.App.4th 414, 421; *Old National Financial Services*, *Inc. v. Seibert* (1987) 194 Cal.App.3d 460, 467.) We therefore need not consider it.

                              DISPOSITION

The judgment is affirmed.

_____

                                        McINTYRE, J.

WE CONCUR:


_____

BENKE, Acting P. J.


_____

HUFFMAN, J.


10