Filed 5/9/16  P. v. Martine CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OSCAR DELGADILLO MARTINE,<br><br>    Defendant and Appellant. | B263819<br><br>(Los Angeles County<br>Super. Ct. No. BA428747) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jose I. Sandoval, Judge.  Affirmed as modified with directions.

Melissa J. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted defendant, Oscar Delgadillo Martine, of shooting at an occupied vehicle. (Pen. Code, § 246)[1].) Shooting at a vehicle is a serious felony. (§ 1192.7, subd. (c)(33).) The trial court orally sentenced defendant to be "imprisoned for five years." (§ 1170, subd. (h)(3).) We modify the judgment to: impose an omitted parole revocation restitution fine (§ 1202.45); reduce defendant's conduct credit by one day; and correct a very serious error in the abstract of judgment which incorrectly states defendant is subject to a county jail sentence when he must serve his term in state prison. We affirm the judgment in all other respects. We direct the clerk of the superior court to amend the abstract of judgment under the personal supervision of the trial court.

# II. THE EVIDENCE

## A. March 8, 2014

On March 8, 2014, around midnight, Alfonso Jimenez was sitting in his car outside his home. A car pulled up parallel to Mr. Jimenez's vehicle. The driver said, "[Y]ou motherfucker you did something to my friend." The driver then twice fired a shotgun at Mr. Jimenez. Mr. Jimenez was struck in the hand and foot. Mr. Jimenez could not identify the person who fired the shots. Mr. Jimenez also saw a passenger in the gunman's vehicle. Mr. Jimenez testified, ". . . I did see another person, but I wasn't able to actually see." Officer Roberto Figueroa, who arrived shortly after the shooting, testified Mr. Jimenez appeared to be under the influence of alcohol.

At trial, Mr. Jimenez accused defendant of other criminal conduct prior to the shooting. These allegations consisted of: repeated efforts to extort money from Mr. Jimenez by defendant; the theft of items from Mr. Jimenez's car by defendant; and

---

[1]    Further statutory references are to the Penal Code unless otherwise noted.

physical assaults on Mr. Jimenez by defendant on two or three occasions. Mr. Jimenez conceded he had not reported these events to law enforcement authorities. Also at trial, Mr. Jimenez denied he was intoxicated when he was shot.

Mr. Jimenez's brother, Oscar Guadalupe Jimenez Martinez, witnessed the incident from a second story window about 45 feet away. Just prior to the shooting, Mr. Martinez heard someone say, "You're going to die, you son-of-a-bitch." Mr. Martinez saw defendant leaning out of a vehicle with a shotgun in his hands. Mr. Martinez did not tell the responding officers what he had seen because he was afraid to get involved.

## B. March 9, 2014

There was an altercation between defendant and Mr. Jimenez on the day after the shooting, March 9, 2014. Someone summoned the police. Mr. Jimenez told the officers who arrived that defendant had been demanding protection money. Also, Mr. Jimenez claimed to have been previously attacked by defendant. Mr. Martinez told Officer Joe Flores that defendant was the perpetrator of the previous evening's shooting. Defendant was arrested.

Officer Joe Flores testified Mr. Jimenez appeared to be intoxicated. Officer Flores said, "There was a strong odor of alcoholic beverage coming from his person." He also had slurred speech and glassy eyes. Additionally, he was very upset.

Officer Anson Bustamante had responded to the shooting location on prior occasions due to incidents between Mr. Jimenez and defendant. On March 9, 2014, immediately after the shooting, referring to defendant, Mr. Jimenez told Officer Bustamante, "[T]his is the . . . guy that stabbed my son . . . ." Officer Bustamante attempted to interview Mr. Jimenez. But Officer Bustamante had a difficult time conversing with Mr. Jimenez for two reasons. First, Mr. Jimenez was irate, belligerent and intoxicated. Mr. Jimenez said he had been drinking all day. Second, there was a language barrier which interfered with an interview. Officer Bustamante testified, "[H]e

3

speaks Spanish and I don't." At trial, defendant denied being intoxicated on March 9, 2014.

## III. DISCUSSION

## A. CALCRIM No. 302

Defendant's sole contention on appeal is that the trial court erred when it failed to sua sponte instruct the jury with CALCRIM No. 302. Defendant asserts this error violated his due process and fair trial rights under the federal and state constitutions. We find no prejudicial error and no constitutional violation.

CALCRIM No. 302 states: "If you determine there is a conflict in the evidence, you must decide what evidence, if any, to believe. Do not simply count the number of witnesses who agree or disagree on a point and accept the testimony of the greater number of witnesses. On the other hand, do not disregard the testimony of any witness without a reason or because of prejudice or a desire to favor one side or the other. What is important is whether the testimony or any other evidence convinces you, not just the number of witnesses who testify about a certain point." The Courts of Appeal have explained that CALCRIM No. 302 is a common sense instruction not to determine truth by counting the number of witnesses who testified to a particular point: "[CALCRIM No. 302 and its counterpart, CALJIC No. 2.22, both] emphasize that it is the convincing force of testimony, not the number of witnesses that is of critical importance. . . . [B]oth instruct that the number of witnesses, *by itself,* is not the determining factor." (*People v. Reyes* (2007) 151 Cal.App.4th 1491, 1497; see *People v. Anderson* (2007) 152 Cal.App.4th 919, 940.) Our colleagues in the Third Appellate District have held: "[CALCRIM No. 302] merely states the common sense notion that the number of witnesses who have given testimony on a particular point is not the test for the truth of that point. It does no more. The jury remains free to choose the witness or witnesses it believes and what part of a witness's testimony it finds believable." (*People v. Anderson, supra,* 152 Cal.App.4th at p. 940; accord, *People v. Ibarra* (2007) 156 Cal.App.4th 1174,

4

1191.) The instruction should be given in every criminal case in which conflicting testimony is presented. (*People v. Cleveland* (2004) 32 Cal.4th 704, 751; *People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 884-885.)

Failure to instruct is subject to review under a state law standard. Our Supreme Court has held, "In determining whether the failure to instruct requires reversal, '[w]e apply the normal standard of review for state law error: whether it is reasonably probable the jury would have reached a result more favorable to defendant had the instruction been given.' [Citations.]" (*People v. McKinnon* (2011) 52 Cal.4th 610, 679; accord, *People v. Diaz* (2015) 60 Cal.4th 1176, 1195.) It is well established that instructional error under state law regarding how a jury should consider evidence does not implicate the federal constitution. (*Estelle v. McGuire* (1991) 502 U.S. 62, 71–75; *People v. Diaz, supra,* 60 Cal.4th at p. 1195; *People v. Dickey* (2005) 35 Cal.4th 884, 905; *People v. Carpenter* (1997) 15 Cal.4th 312, 393; *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1300.)

Defendant argues the failure to instruct with CALCRIM No. 302 allowed the jury "to evaluate three areas of conflicting evidence with prejudice and favoritism instead of reason": the differing statements concerning Mr. Jimenez and Mr. Martinez heard just prior to the shooting; Mr. Jimenez's claim alleging disclosing to authorities about prior physical altercations as purportedly contradicted by Officer Bustamante; and whether Mr. Jimenez was intoxicated on March 8 or 9. Defendant asserts, "[H]ad the trial court [instructed with CALCRIM No. 302], the jury would have known to rely on the convincing force of testimony—and not on irrationality, prejudice, or favoritism—when assessing the three areas of conflicting testimony."

The trial court fully instructed the jury on judging the credibility of witnesses, including: "[k]eep an open mind throughout the trial" and "[d]o not let bias, sympathy, prejudice, or public opinion influence your decision" (CALCRIM Nos. 101 and 200); "[b]ias includes . . . bias for or against the witnesses, attorneys, defendant or alleged victim" (CALCRIM No. 200); "you must impartially compare and consider all the evidence that was received throughout the entire trial" (CALCRIM Nos. 103 and 220); "[i]n deciding whether testimony is true and accurate, use your common sense and

5

experience"; "[y]ou must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have"; "[i]n evaluating a witness's testimony, you may consider anything that *reasonably* tends to prove or disprove the truth or accuracy of that testimony" (CALCRIM Nos. 105 and 226, italics added)[2]; "[y]ou must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial" (CALCRIM Nos. 103, 220); and "you must decide whether an eyewitness gave truthful and accurate testimony." (CALCRIM No. 315.)[3]

---

[2]     CALCRIM No. 226 reads in full:  "You alone must judge the credibility or believability of the witnesses.  In deciding whether testimony is true and accurate, use your common sense and experience.  You must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have.  [¶]  You may believe all, part, or none of any witness's testimony.  Consider the testimony of each witness and decide how much of it you believe.  [¶]  In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony.  Among the factors that you may consider are:  [¶]  How well could the witness see, hear, or otherwise perceive the things about which the witness testified?  [¶]  How well was the witness able to remember and describe what happened?  [¶]  What was the witness's behavior while testifying?  [¶]  Did the witness understand the questions and answer them directly?  [¶]  Was the witness's testimony influenced by a factor such as bias or prejudice, a personal relationship with someone involved in the case, or a personal interest in how the case is decided?  [¶]  What was the witness's attitude about the case or about testifying?  [¶]  Did the witness make a statement in the past that is consistent or inconsistent with his or her testimony?  [¶]  How reasonable is the testimony when you consider all the other evidence in the case?  [¶]  Did other evidence prove or disprove any fact about which the witness testified?  [¶]  Do not automatically reject testimony just because of inconsistencies or conflicts.  Consider whether the differences are important or not.  People sometimes honestly forget things or make mistakes about what they remember.  Also, two people may witness the same event yet see or hear it differently.  [¶]  If you decide that a witness deliberately lied about something significant in this case, you should consider not believing anything that witness says.  Or, if you think the witness lied about some things, but told the truth about others, you may simply accept the part that you think is true and ignore the rest."

[3]     CALCRIM No. 315, on evaluating eyewitness testimony, reads:  "You have heard eyewitness testimony identifying the defendant.  As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony.  [¶]  In evaluating identification testimony, consider the following questions:  [¶]  Did the witness know or have contact with the defendant before the event?  [¶]  How well could the witness see

The foregoing instructions sufficiently informed the jurors that in evaluating witness credibility they could not engage in irrationality, prejudice or favoritism. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1262 [failure to give CALJIC No. 2.22 instruction was harmless where jury received sufficient guidance from other standard instructions]; *People v. Snead* (1993) 20 Cal.App.4th 1088, 1097, disapproved on another point in *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 181-182 [same]; cf. *People v. McKinnon, supra,* 52 Cal.4th at p. 680 [instructions given sufficiently alerted jury to view testimony with caution]; *People v. Dickey, supra,* 35 Cal.4th at pp. 906-907 [same].) The absence of a CALCRIM No. 302 instruction did not leave the jury free to "unreasonably interpret" the pre-shooting statements Mr. Jimenez and his brother heard, as defendant contends. It did not leave the jury "with no guidance" on evaluating conflicting testimony. The prosecutor did not suggest the jury should resolve any factual issue based on the number of witnesses testifying thereto. No doubt, only one witness identified defendant as the person who fired the shots. Nonetheless, there is no reasonable likelihood the jury would have returned a result more favorable to defendant had the trial court also instructed with CALCRIM No. 302.

---

the perpetrator? [¶] What were the circumstances affecting the witness's ability to observe, such as lighting, weather conditions, obstructions, distance, and duration of observation? [¶] How closely was the witness paying attention? [¶] Was the witness under stress when he or she made the observation? [¶] Did the witness give a description and how does that description compare to the defendant? [¶] How much time passed between the event and the time when the witness identified the defendant? [¶] Was the witness asked to pick the perpetrator out of a group? [¶] Did the witness ever fail to identify the defendant? [¶] Did the witness ever change his or her mind about the identification? [¶] How certain was the witness when he or she made an identification? [¶] Are the witness and the defendant of different races? [¶] Were there any other circumstances affecting the witness's ability to make an accurate identification?"

### B. Sentencing

#### 1. The parole revocation restitution fine

The trial court orally imposed a $300 restitution fine. (§ 1202.4, subd. (b).) The trial court was required to also impose a $300 parole revocation restitution fine. (§ 1202.45; *People v. Smith* (2001) 24 Cal.4th 849, 853; *People v. Vazquez* (2009) 178 Cal.App.4th 347, 355-356.) We may correct the legally unauthorized sentence. (*Ibid.*; see *People v. Miles* (1996) 43 Cal.App.4th 364, 367.) We modify the judgment to include a $300 parole revocation restitution fine. We direct the clerk of the superior court to correct the abstract of judgment in this regard.

#### 2. Conduct credit

The trial court gave defendant credit for 373 days in presentence custody plus 373 days for good conduct. Defendant's conduct credit should have been 372 days. (*People v. Whitaker* (2015) 238 Cal.App.4th 1354, 1357-1362; *People v. Chilelli* (2014) 225 Cal.App.4th 581, 588.) The judgment must be modified and the abstract of judgment amended to so provide.

#### 3. State prison commitment

As noted above, defendant was convicted of a serious felony. (§ 1192.7, subd. (c)(33).) As a result, he was subject to a state prison sentence. (§ 1170, subd. (h)(3).) The trial court orally sentenced defendant to be "imprisoned for five years." The abstract of judgment, in the heading and in sections 4 and 15, erroneously reflects a county jail commitment. The trial court is to ensure defendant is actually serving his sentence in State prison. Because of the potential gravity of the clerical error, the trial court is to personally supervise the preparation of the corrected abstract of judgment. (*People v.*

*Acosta* (2002) 29 Cal.4th 105, 110, fn. 2; *People v. Chan* (2005) 128 Cal.App.4th 408, 425-426.)  The abstract of judgment must be amended to reflect a state prison commitment.

## IV.  DISPOSITION

The judgment is modified to reflect a $300 parole revocation restitution fine (Pen. Code, § 1202.45) and an award of 372 days of conduct credit.  The judgment is affirmed in all other respects.  Upon remittitur issuance, the clerk of the superior court is to prepare an amended abstract of judgment which so reflects.  Additionally, the abstract of judgment must be amended in three places—the heading, section 4 and section 15—to reflect a state prison commitment pursuant to Penal Code section 1170, subdivision (h)(3).  The trial court is to ensure defendant is actually serving his sentence in state prison.  Because of the potential gravity of the clerical error, the trial court is to personally insure the preparation of the corrected abstract of judgment and that defendant is imprisoned in the state penitentiary.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P.J.

We concur:

KRIEGLER, J.            KUMAR, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.